**C. Mae BUNCH,**

v.

**BOARD OF REVIEW, RHODE ISLAND DEPARTMENT OF EMPLOYMENT AND TRAINING.**

No. 95–163–M.P.

Supreme Court of Rhode Island.

Feb. 25, 1997.

Robert B. Mann, Providence, for Plaintiff.

Valentino D. Lombardi, Anthony E. Angeli, Jr., Providence, for Defendant.

**OPINION**

WEISBERGER, Chief Justice.

This case comes before us on a petition for certiorari filed by the Department of Children, Youth and Families seeking review of a judgment of the District Court that sustained the appeal of C. Mae Bunch (claimant) from a decision of the Board of Review of the Department of Employment and Training (board of review). The board of review had upheld the denial of unemployment-compensation benefits to claimant. We grant the petition for certiorari and quash the judgment of the District Court. The facts of the case insofar as pertinent to this petition are as follows.

The claimant in this case was employed by the Department of Children, Youth and Families (DCYF) as superintendent of the Rhode Island Training School for Youth. On February 5, 1994, she called the West Warwick police department, seeking their assistance in finding an intruder in her basement. When the police arrived, claimant was on an up-

stairs landing holding a machete in her hand. Claimant was first asked to put the machete aside. She did so and then advised the police that she heard strange noises emanating from her basement and believed someone was there. She appeared to Patrolman Timothy Poulin to be nervous and emotional. He and another officer conducted a search of the bottom level of the house and found neither an intruder, nor sign of forced entry. The claimant asked the officers to search the entire house in order to allay her fears. In the course of this consensual search, Officer Poulin discovered a white powder that he believed to be a controlled substance, along with accompanying drug paraphernalia in the master bedroom. As a result of this discovery the officer admonished the claimant of her *Miranda* rights and brought her to the West Warwick police station. She was subsequently released from custody and returned to her home pending examination of the substance by the state toxicology laboratory. The substance later was determined at the toxicology laboratory to be cocaine.

That same evening claimant called her supervisor, the DCYF director, Linda D'Amario Rossi (director), to advise her of the incident, but claimant did not disclose that she had been taken into custody, that drug paraphernalia and items suspected of being controlled substances had been seized from the master bedroom of her home, and that she had been advised that the West Warwick police might proceed with a possible criminal prosecution.

On February 6 a member of the West Warwick police informed the director that they had discovered a substance believed to be narcotics and also drug paraphernalia and that, depending on toxicology results, the police department intended to proceed with a criminal prosecution. They also informed the director that claimant had been detained and had been advised of her *Miranda* rights.

On February 6, 1994, claimant again called the West Warwick police department and asked that it send someone to her residence. This time she was holding a two-inch by four-inch piece of wood and claimed that an intruder was in her home. A search indicated that there was no intruder and no sign of forced entry. The claimant expressed no confidence in the officers' findings. She insisted that her neighbors were not talking to her and that the police had "bugged" her telephone lines and were determined "to get" her.

Following the toxicology report that the substance seized from her house had tested positive for cocaine, an arrest warrant was issued and criminal charges were filed against claimant. As a result of these circumstances, which were reported to the director claimant was placed on administrative leave by the director. After an administrative hearing she was terminated from her employment as superintendent of the Training School, effective February 10, 1994. On February 18, 1994, claimant applied for unemployment compensation. Her application was denied, and claimant appealed this denial to the board of review where, after a hearing, the referee determined that claimant had been discharged for proven misconduct. The referee found that

> "the claimant's conduct was certainly conduct of willful and wanton disregard of the standards of behavior which the employer had the right to expect of the claimant. It further must be found that the claimant violated the obligations and duties of her position with substantial disregard of the employer's interest by making misleading and incorrect statements to her department director."

The board of review by a majority decision affirmed the findings of the referee with one member dissenting on the ground that the misconduct was not related to the claimant's employment. A judge of the District Court reversed the decision of the board of review on the ground that there was no evidence of job-related misconduct proven against claimant. He emphasized that claimant was dismissed from her employment because she was accused of committing a crime while off duty and because she had failed to disclose the facts surrounding the occurrence of February 5, 1994. He found as a fact that the circumstances upon which the criminal charges were based were not related to her official duties and, therefore, did not disquali-

fy her from unemployment compensation. With this finding we disagree.

We consistently have held that judicial review of the determinations of an administrative agency is limited to questions of law. *St. Pius X Parish Corp. v. Murray*, 557 A.2d 1214, 1218 (R.I.1989); *Powell v. Department of Employment Security Board of Review*, 477 A.2d 93, 95 (R.I.1984). Judicial review of questions of fact is sharply limited in accordance with G.L.1956 § 42–35–15, which reads as follows in pertinent part:

"(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, [inferences], conclusions, or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error [of] law;

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

A judicial officer does not weigh the evidence upon which findings of fact are based but merely reviews the record in order to determine whether there is legally competent evidence to support the administrative decision. *St. Pius X Parish Corp.*, 557 A.2d at 1218; *Powell*, 477 A.2d at 95. A judicial officer may not substitute his or her judgment for that of the administrative agency. He or she may reverse such findings only in instances wherein the conclusions and the findings of fact are "totally devoid of competent evidentiary support in the record," *Milardo v. Coastal Resources Management Council*, 434 A.2d 266, 272 (R.I.1981), or from the reasonable inferences that might be drawn from such evidence. *Guarino v. De-*

*partment of Social Welfare*, 122 R.I. 583, 588–89, 410 A.2d 425, 428 (1980). In the case at bar we conclude that the District Court judge substituted his judgment for that of the board of review in drawing the inference from all the relatively undisputed facts that claimant's conduct was not job related. In *Turner v. Department of Employment Security, Board of Review*, 479 A.2d 740 (R.I. 1984), we cited with approval the definition of "misconduct" adopted by the *Turner* district court in rendering its decision:

" '[M]isconduct' * * * is limited to conduct evincing such willful or wanton disregard of an employer's interest as is found in deliberate violations or *disregard of standards of behavior which the employer has the right to expect of his [or her] employee,* or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertancies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed 'misconduct' within the meaning of the statute." Id. at 741–42 (quoting *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 296 N.W. 636, 640 (1941)).

This definition taken from the case of *Boynton Cab Co.* has also been cited with approval in *St. Pius X Parish Corp.*, 557 A.2d at 1217 and in *Kane v. Women & Infants Hospital*, 592 A.2d 137, 139 (R.I.1991). We adopt it as our own under G.L.1956 § 28–44–18.

In the case at bar, it is undisputed that the claimant had a position of high visibility and great responsibility. As superintendent of the training school, she had an obligation to maintain standards of conduct at the very least in compliance with the criminal law both on and off the job. To possess controlled substances and drug-related paraphernalia in her home was completely to violate those standards of conduct that the employer had a right to expect from her. Many of the young people committed to her

338

care at the training school were confined for drug-related offenses. A superintendent who committed similar offenses and was criminally charged for so doing could scarcely be said to have committed a non-job-related offense. Her ability to carry out the duties of her office not only was impaired, but was totally extinguished by such conduct. The director had the right to expect from the claimant a reasonable standard of obedience to the criminal law both on and off the premises of her employment. Whether or not she was expected to respond to emergencies twenty-four hours a day, at least her employer had the right to expect that she would not become totally devoid of rational restraint upon her conduct by utilizing cocaine. In drawing the inference that this misconduct was job related, the board of review had ample competent evidence to support its finding. In substituting his judgment and drawing a different inference, the trial justice was in error.

For the reasons stated, the petition for certiorari is hereby granted. The judgment of the District Court is quashed. The papers in the case may be remanded to the District Court with our decision endorsed thereon.