[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is an appeal from a decision of the Rhode Island Department of Human Services ("DHS"). Appellant Ivette Alicea ("Appellant") seeks reversal of a DHS decision in which DHS denied Appellant's application for Medical Assistance ("MA") benefits. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 Facts and Travel
In October 2002, Appellant filed an application for MA benefits, claiming disability due to depression, back pain, and left leg pain. Appellant submitted medical documentation to support her application, which was reviewed by the Medical Assistance Review Team ("MART"). On that basis, MART found her ineligible for MA because she did not qualify as totally or permanently disabled; DHS sent a written notice of their findings to Appellant, dated January 8, 2003. Appellant filed a timely request for an administrative hearing, which was scheduled for March 20, 2003. A representative of DHS and Appellant both testified at this hearing.
The DHS representative testified that pursuant to the Department of Human Services Policy manual, MART must establish an applicant's eligibility in order to grant MA benefits. The DHS representative explained that in order for an applicant to qualify for MA, he or she must be over the age of 65, blind or disabled. The MART, finding that Appellant is neither blind nor over the age of 65, used a five-step sequential evaluation to determine if Appellant was disabled. According to the DHS representative, in order for an illness or an injury to qualify as a disability "it must last 12 months and must be severe enough to render someone incapable of any type of substantial gainful activity." (Tr. at 5). The DHS representative testified that the MART reviewed the medical documentation signed by Dr. Pancholi, which stated that the "impairments are not expected to last 12 months or result in death." As a result, the MART concluded that "the impairments [did] not meet the durational requirement of 12 months" and that Appellant is not disabled.
Appellant also testified at the hearing. Specifically, she provided the Court with additional documentation of her medical condition. She testified that she was awaiting a response regarding an application for social security pending in New York. Furthermore, she testified that she has suffered with these medical conditions for over two years and that documentation from her doctors in New York and Puerto Rico substantiate her testimony. Appellant agreed to supplement her evidence at a later date.
The supplemental evidence was provided to MART. The MART reviewed this evidence again, finding that the Appellant was not disabled for the purposes of MA.
The Hearing Officer issued a final decision on May 16, 2003, affirming the decision of the MART. The Hearing Officer made the following findings: (1) Appellant is not age sixty-five (65) or blind; (2) Appellant's impairments include a herniated disc and depression; (3) Appellant's treating physician believes Appellant has significant limitations; (4) an MRI reveals no gross abnormalities; (5) Appellant's physical therapist reports that Appellant completed her therapy and attained her treatment goals; (6) Appellant's treating physician opines that Appellant is responding well to depression medication; (7) Appellant's conditions are not so severe as to qualify as a disability.
Based on these findings, Appellant filed an appeal with this Court. Appellant seeks to reverse and remand the DHS decision.
 Standard of Review
The standard of review for this Court's appellate consideration of a decision of the Department of Human Services is governed by G.L. § 42-35-15(g) of the Administrative Procedures Act. Said section provides for review of contested agency decisions as follows:
 "The Court shall not substitute its judgment for that of the agency as to the weight of the evidence on the questions of fact. The court may affirm a decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
Pursuant to § 42-35-15, the Superior Court acts in the capacity of an appellate court when reviewing a decision of an administrative agency. Mine Safety Appliances Co. v. Berry,620 A.2d 1255, 1259 (R.I. 1993). The Superior Court is confined to "an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision." Johnston Ambulatory Surgical Associates, Ltd. v.Nolan, 755 A.2d 799, 805 (R.I. 2000) (quoting Barrington SchoolCommittee v. Rhode Island State Labor Relations Board,608 A.2d 1126, 1138 (R.I. 1992)). If the agency decision was based on sufficient competent evidence in the record, the reviewing court must affirm the agency's decision. Nolan, 755 A.2d at 805 (citing Barrington School, 608 A.2d at 1138). "A judicial officer . . . may reverse [the] findings of the administrative agency only in instances where the conclusions and the findings of fact are `totally devoid of competent evidentiary support in the record,' (Bunch v. Board of Review, 690 A.2d 335, 337 (R.I. 1997); Milardo v. Coastal Resources Management Council,434 A.2d 266, 272 (R.I. 1981), or from the reasonable inference that might be drawn from such evidence." Bunch, 690 A.2d at 337 (quoting Guarino v. Department of Social Welfare, 122 R.I. 583, 588-89, 410 A.2d 425, 428 (1980)). However, questions of law are not binding upon the court and are reviewed de novo.Narragansett Wire Co. v. Norberg, 118 R.I. 596, 376 A.2d 1, 16 (R.I. 1977); Bunch, 690 A.2d at 337.
 The Department of Human Services
The Rhode Island Department of Human Services is an agency within the Executive Branch of state government. G.L. 1956 §42-12-1, et seq. Various social service programs are managed and controlled by DHS, including state and federally funded public financial assistance programs. G.L. 1956 § 42-12-4. One such program is the Medical Assistance Program.
General Laws 1956 § 40-8-1(c) provides in pertinent part:
 "[It is] declared to be the policy of the state to provide medical assistance for those persons in this state who possess the characteristics of persons receiving public assistance under the provisions of § 40-5.1-9 or § 40-6-27, and who do not have the income and resources to provide it for themselves or who can do so only at great financial sacrifice. Provided further that medical assistance must . . . qualify for federal financial participation pursuant to the provisions of Title XIX of the federal Social Security Act, 42 U.S.C. § 1396 et seq., as such provisions apply to medically needy only applicants and recipients."
DHS administers the Medical Assistance Program by applying the standards of eligibility, as enumerated in G.L. 1956 § 40-8-3. All qualified applicants are entitled to the payment of benefits by DHS. Eligibility is determined by DHS regulations, which must be approved by the federal government. DHS must comply with this mandate in order to receive federal funding. See, G.L. 1956 §40-8-5.
 Analysis
Appellant contends that the DHS decision denying her benefits was based on error of law, is arbitrary and capricious, and is not supported by substantial evidence. Specifically, Appellant asserts that DHS misapplied the severity standard, thereby erroneously determining that Appellant's impairments were insufficiently severe to qualify for MA benefits. Appellant also maintains that DHS improperly substituted its judgment for that of the medical professional. Finally, Appellant claims that DHS failed to consider the length of time Appellant suffered from these impairments prior to submitting her application for benefits.
Alternatively, DHS asserts that the Hearing Officer relied on the most recent diagnostic studies of Appellant's medical condition, the physical therapist's report, and the treating physician's report regarding depression to find that the medical documentation did not support her disability claim. "The Hearing Officer made specific findings relating to each impairment based upon the testimony, evidence and DHS policy presented." Therefore, DHS requests that this Court affirm its decision.
 Eligibility Standards
An applicant is eligible for MA under federal law if the applicant is (1) sixty-five years of age, or (2) blind, or (3) at least eighteen years old and permanently and totally disabled. G.L. 1956 § 40-8-3. If the application is based on a physical or mental impairment, federal guidelines provide a five-step sequential procedure to determine if the disability is one which qualifies for assistance. This procedure is as follows:
 "1. Is the claimant engaged in a substantial activity?
 2. If not, is the impairment(s) severe?
 3. If severe, does it meet or equal an impairment listed in the Supplemental Security Income (SSI) regulations?
 4. If it does not meet or equal SSI regulations, does the impairment(s) prevent the claimant from doing past relevant work?
 5. Considering age, education, work experience, and `residual functional capacity,' does the impairment(s) prevent the claimant from doing other work in the national economy." See 20 C.F.R. § 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).
The Bowen Court described the approach to this sequential assessment by the following:
 "step one determines whether the claimant is engaged in `substantial gainful activity.' If he is, disability benefits are denied. . . . If he is not, the decisionmaker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. That determination is governed by the `severity regulation' at issue in this case. . . . If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity. . . . If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he has performed in the past. If the claimant is able to perform his previous work, he is not disabled. . . . If the claimant cannot perform this work, the fifth and final step of the process determines whether he is able to perform other work in the national economy in view of his age, education, and work experience. The claimant is entitled to disability benefits only if he is not able to perform other work." Id. at 140-141.
DHS is not required to complete all five-steps of the evaluation; rather DHS may end the inquiry at any point during the evaluation and conclude that the applicant is not disabled.
 Severity Defined
Appellant contends that the Hearing Officer applied the improper standard in evaluating the severity of Plaintiff's condition. Citing Bowen, 482 U.S. at 153, Appellant asserts that this part of the test serves as a "de minimis device" to preclude those persons having only minor impairments from receiving MA. DHS argues that the Hearing Officer applied the appropriate standard, specifically determining whether Appellant's condition was one which "significantly" limited Appellant's "physical or mental ability to do basic work activities."
When read in context, this de minimis text simply stands for the proposition that many cases may be disposed of quickly and easily based on the severity requirement alone. Specifically, theBowen Court stated: "In the interests of reasonable administrative flexibility and efficiency, a determination that an individual is not disabled may be based on a judgment that an individual has no impairment, or that the medical severity of his impairment or combination of impairments is slight enough to warrant a presumption, even without a full evaluation of vocational factors, that the individual's ability to perform [substantial gainful activity] is not seriously affected." Id.
at 152. (citing, H.R. Conf. Rep. No. 98-1039, p. 30 (1984). n10).
Nevertheless, many cases may not be disposed of as easily as those cases in which it is clear after a cursory review that the impairment is slight. These more difficult cases require a more detailed analysis as to severity; the Hearing Officer determines whether the condition comports with the definition of severity as outlined in the regulations and under the Social Security Act. According to the Bowen Court, disability is defined under
 "the Social Security Amendments Act of 1954 . . . as `inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . .' 68 Stat. 1080, 42 U.S.C. § 423(d)(1)(A). The severity regulation requires the claimant to show that he has an `impairment or combination of impairments which significantly limits' `the abilities and aptitudes necessary to do most jobs.' 20 C.F.R. § 404.1520(c), 404.1521(b) (1986). On its face, the regulation is not inconsistent with the statutory definition of disability. The Act `defines disability in terms of the effect a physical or mental impairment has on a person's ability to function in the workplace.' See Heckler v. Campbell, supra, at 459-460. The regulation adopts precisely this functional approach to determining the effects of medical impairments. If the impairments are not severe enough to limit significantly the claimant's ability to perform most jobs, by definition the impairment does not prevent the claimant from engaging in any substantial gainful activity. The Secretary, moreover, has express statutory authority to place the burden of showing a medically determinable impairment on the claimant. The Act provides that `an individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require.'" § 423(d)(5)(A) (1982 ed. and Supp. III). See Mathews v. Eldridge, 424 U.S. 319, 336 (1976). n5. Bowen,
482 U.S. at 146.
In the instant case, the Hearing Officer applied the following standard to determine if the severity requirement was met. The Hearing Officer inquired as to whether "the nature of the impairment was so severe as to prevent the appellant from performing at least one basic work activity." (Administrative Hearing Decision at 3). In answer of that question, the Hearing Officer considered the testimony, the medical documentation, and the decision of the MART. Acknowledging that the Appellant's treating physician reported that Appellant has "significant physical limitations," the Hearing Officer delved further into the record. (Administrative Hearing Decision at 3). The Hearing Officer found that a MRI "revealed the appellant was status post surgical repair, with no gross abnormalities." (Administrative Hearing Decision at 3). Additionally, he found that the July 2002 physical therapy report indicated that Appellant had successfully completed a therapy program, and the therapist reported that Appellant had "attain[ed] her treatment goals." (Administrative Hearing Decision at 4). Given the compilation of the diagnostic test, physical therapy report, and the fact that no follow-up visits had been scheduled, the Hearing Officer concluded that Appellant was not disabled according to the definition as established under the law.
As to the claim of disabling depression, the Hearing Officer examined the treating physician's report which indicated that "the appellant's depression is responding well to medication." (Administrative Hearing Decision at 4). Without other evidence, namely a psychiatric or psychological evaluation, the Hearing Officer was forced to rely solely on this report. According to the report, Appellant's condition was controlled through medication. Therefore, the Hearing Officer concluded that Appellant's depression did not meet the standard of severity and did not qualify as a disability for MA purposes.
 Weight of Physician's Opinion
Appellant contends that the Hearing Officer did not afford the opinion of Appellant's treating physician controlling weight as required under the law. Specifically, Appellant asserts that the Hearing Officer "discounted Dr. Pancholi's findings not because the doctor relied upon unacceptable clinical or lab techniques [he made no such finding], and not because because [sic]substantial evidence controverted his opinions [again, he made no such finding], but because he (a layperson) disagrees withthe doctor's interpretation of the 5/02 lumbar MRI results! (Appellant's memo at 8) (emphasis in original). DHS, however, asserts that the Hearing Officer considered the doctor's report dated October 21, 2002, but nevertheless found that the report was not supported by "medically acceptable clinical and laboratory diagnostic techniques." DHS asserts that the Hearing Officer instead relied on the most recent diagnostic reports, namely the MRI from May 2002 and the physical therapy report from July 2002.
In determining whether an applicant qualifies for MA based on a disability, "the opinion of a claimant's treating physician is entitled to controlling weight, so long as it `is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record.'" 20 C.F.R. § 416.927 (d)(2). Nevertheless, the treating physician's opinion is not always dispositive. 20 C.F.R. § 404.1527(d)(2). Furthermore, great deference is given to the factual findings and conclusions of the Hearing Officer. Bunch v. Board of Review, 690 A.2d 335, 337 (R.I. 1997). Unless the findings and conclusions are "totally devoid of competent evidentiary support in the record," the Court will not disturb them. Id.
The Hearing Officer's decision in the instant case reveals that the Hearing Officer acknowledged and reviewed the treating physician's report. Nevertheless, the Hearing Officer relied on other evidence presented to reach his conclusion. Specifically, the Hearing Officer found:
 "An MRI of this back completed in May 2002 revealed the appellant was status post surgical repair, with no gross abnormalities. There is nothing beyond this MRI that would suggest the appellant continues to experience problems with her back. The July 2002 PT report, [sic] notes the appellant was discharged from PT after attaining her treatment goals. There is no further PT evaluation beyond this date. This Hearing Officer opines, that given the lack of any further medical follow up or PT, that the musculoskeletal problem has been resolved at this time." (Administrative Hearing Decision at 3).
In addition, the Hearing Officer relied on the fact that the MART, after reviewing the evidence twice, found that the Appellant was not disabled. (Administrative Hearing Decision at 4). Only after a comprehensive review of the testimony, evidence and policy, did the Hearing Officer find that the Appellant was not disabled as established by title XIX Medical Assistance regulations.
Accordingly, the Hearing officer did not err in rejecting the physician's recommendation. The Hearing Officer relied on competent evidence in the record in support of his conclusion and therefore, this Court will not disturb his findings.
 Durational Standard
Appellant contends in her reply memorandum that DHS incorrectly applied the durational standard. Specifically, Appellant asserts that the Hearing Officer is required to consider both the months preceding the application in addition to the months going forward in determining if the twelve-month duration requirement has been satisfied. DHS did not respond to the reply brief. However, in DHS's Response Brief in Support of Agency Decision, DHS noted: "[t]he MA-63 notes that the Plaintiff has significant physical limitations however the physician notes that the impairment is not expected to last twelve months." (Defendant's Memo at 14).
Appellant cites Vendetti v. R.I. Dep't of Human Servs., 2003 R.I. Super. LEXIS 121, for the proposition that:
 "[t]he definition of the duration requirement located at 20 C.F.R. § 416.909 clearly includes the continuous period beginning with the onset of the impairment until the impairment is expected to end. Therefore, in determining whether the duration requirement has been satisfied, the DHS must consider not only the amount of time that the impairment will endure into the future, but also that time which has already passed."
The Vendetti Court reversed a DHS decision to deny MA benefits. In that case, the Hearing Officer referenced only the later portion of the duration requirement, specifically, that the impairment "must be expected to last for a continuous period of at least 12 months." Id. at 14.
In the instant case, the Hearing Officer did not mention the duration requirement in his decision. Rather, he found that Appellant's condition was not sufficiently severe to qualify for MA. Improvement of each condition was supported by evidence, including, the MRI diagnostic test, the physical therapy report and the treating physician's report regarding Appellant's depression. The evidence indicated that Appellant's back condition and depression were improving and controllable through medication. Accordingly, the Hearing Officer concluded that Appellant's impairments were not permanently and totally disabling. Again, the requirement that a disability is severe is twofold; it must be permanent, satisfying the twelve-month durational requirement, and it must be total, satisfying the inability to engage in daily activity requirement. Here, the Hearing Officer did not address the durational requirement because the severity requirement was not satisfied. DHS is not required to complete all five-steps of the evaluation. SeeBowen v. Yuckert, 482 U.S. 137, 140-142 (1987).
 CONCLUSION
This Court finds that the DHS Hearing Officer completed a comprehensive review of the testimony and evidence presented by all parties. The record establishes that the decision to deny Appellant MA benefits was supported by reliable, probative, and substantial evidence. The Hearing Officer did not err in the application of the severity requirement, deference to the treating physician's report, or the application of the durational standard. Substantial rights of the Appellant have not been prejudiced. Accordingly, the decision of the Hearing Officer is affirmed.