[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is an appeal from a decision of a Hearing Officer of the Rhode Island Department of Human Services (DHS), denying David Brooks's (Plaintiff) application for Medical Assistance (MA) benefits. Plaintiff seeks reversal of DHS's denial of benefits. Jurisdiction is pursuant to G.L. 1956 §42-35-15.
 FACTS AND TRAVEL
In September 2002, Plaintiff submitted an application for Medical Assistance (MA), claiming disability due to migraines, seizures, testicular cancer, hypertension, and diabetes. DHS's Medical Assistance Review Team (MART) reviewed medical documentation submitted by the Plaintiff, including two MA-63 Physician Examination Reports. After evaluating Plaintiff's application, the MART determined that Plaintiff was not disabled and denied his eligibility for benefits. Plaintiff timely filed a request for an administrative hearing, which was held on December 24, 2002.
At the hearing, the DHS representative testified that in order to grant MA benefits, MART must find that the applicant is over the age of 65, blind, or disabled. In order to establish disability, MART must determine that the applicant suffers from a medically determinable impairment severe enough to render that person incapable of engaging in any substantial gainful activity. In making this determination, MART follows a five step sequential evaluation process. The first step is to determine whether the applicant is employed, and in this case, the DHS representative elicited from Plaintiff that he is not employed. The next step is to evaluate whether the impairment is severe. In doing so, MART reviewed medical documentation, including two MA-63's from Dr. Terek Wehbe, Plaintiff's physician, in which he stated that Plaintiff's impairment consists of migraines, testicular cancer, and extreme anxiety and depression. The DHS representative testified that, based on the records, MART found Plaintiff's impairments to be non-severe and that he suffers from no more than slight limitations. Plaintiff testified at the hearing that he is not working and has not worked in over two years, and that he only drives when necessary. He suffers from migraine headaches 24 hours a day and takes two medications for seizure disorders. Plaintiff did not bring any additional medical evidence to the hearing.
The Hearing Officer issued a written decision dated February 7, 2003, affirming MART's decision. Upon reviewing the MA-63 form dated August 23, 2002, in which Dr. Wehbe lists extreme mental and physical limitations, the Hearing Officer concluded that such limitations were not supported by the rest of the record. In her decision, the Hearing Officer noted the lack of objective medical testing to support the physical limitations, as well as the lack of a psychological or psychiatric evaluation to support the mental limitations. Although Plaintiff underwent a surgical removal of his right testicle due to a mass, the Hearing Officer found neither any indication in the medical record that there has been a recurrence or metastasis, nor that Plaintiff has work impairments as a result of the surgery. The Hearing Officer also made the following findings: Plaintiff's diabetes and hypertension are controlled with medications; Plaintiff's seizure condition is also controlled with medication, the only emergencies occurred when Plaintiff was not taking his medication or when he switched medications; and, although Plaintiff testified that he suffers from migraines, a cerebral CT scan found no significant abnormality. The Hearing Officer concluded that Plaintiff's verifiable impairments are not severe; therefore, the evaluation process stopped at step two.
The Plaintiff timely filed an appeal of the agency's decision. Plaintiff requests this Court to reverse DHS's decision and promptly provide him with MA benefits, or, alternatively, reverse and remand for issuance of a revised decision.
 STANDARD OF REVIEW
Rhode Island General Laws § 42-35-15 (g) governs the Superior Court's scope of review for an appeal of a final agency decision. G.L. 1956 § 42-35-15 (g). The statute provides, in relevant part:
 "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." G.L. 1956 § 42-35-15.
Sitting as an appellate court with a limited scope of review, the Superior Court justice may not substitute his or her judgment for that of the agency with respect to the credibility of the witnesses or the weight of the evidence as to questions of fact.Ctr. for Behavioral Health v. Barros, 710 A.2d 680, 684 (R.I. 1998); Mine Safety Appliances Co. v. Berry, 620 A.2d 1255, 1259 (R.I. 1993). "The Superior Court is confined to a determination of whether there is any legally competent evidence to support the agency's decision." Envt'l Scientific Corp. v. Durfee,621 A.2d 200, 208 (R.I. 1993). If the agency decision was based on sufficient competent evidence in the record, the reviewing court must affirm the agency's decision. Johnston Ambulatory SurgicalAssocs., Ltd v. Nolan, 755 A.2d 799, 805 (R.I. 2000). A judicial officer may reverse the findings of an administrative agency "only in instances wherein the conclusions and the findings of fact are `totally devoid of competent evidentiary support in the record,' Milardo v. Coastal Res. Mgmt. Council, 434 A.2d 266, 272 (R.I. 1981) or from the reasonable inferences that might be drawn from such evidence." Bunch v. Bd. of Review,690 A.2d 335, 337 (R.I. 1997) (citing Guarino v. Dep't of Soc. Welfare,122 R.I. 583, 588-89, 410 A.2d 425, 428 (R.I. 1980)). "Questions of law, however, are not binding upon the court and may be reviewed to determine what the law is and its applicability to the facts." Narragansett Wire Co. v. Norberg, 118 R.I. 596, 607, 376 A.2d 1, 6 (1977). The Superior Court also has the authority to remand a case "to correct deficiencies in the record and thus afford the litigants a meaningful review." Lemoine v.Dept. of Mental Health, Retardation Hosps., 113 R.I. 285, 290,320 A.2d 611, 614 (1974).
 DEPARTMENT OF HUMAN SERVICES
The Department of Human Services exists as an agency within the Executive Branch. G.L. 1956 § 42-12-1 et seq. Pursuant to §42-12-4 of the Rhode Island General Laws, DHS manages federally and state funded public assistance programs, one of which provides MA to persons who qualify for benefits under § 40-8-3. G.L. 1956 § 42-12-4. In order to receive federal funding for the MA program, DHS must "establish income and resource rules, regulations, and limits in accordance with title XIX of the federal Social Security Act, 42 U.S.C. § 1396 et seq., as applicable to the medically needy only applicants and recipients." G.L. 1956 § 40-8-3; 42 U.S.C. § 1396. Thus, when defining "disabled" and creating eligibility requirements, the DHS must promulgate rules that adhere to the federal definitions and guidelines as set forth in federal statutes and regulations.42 U.S.C. § 1396 et seq.; 20 C.F.R. § 416.901-998.
An applicant is eligible for MA under federal law if the applicant is (1) sixty-five years of age, (2) blind, or (3) at least eighteen years old and permanently and totally disabled. G.L. 1956 § 40-8-3. Section 0352.15 of the DHS Manual outlines the policy relating to eligibility based on disability, which mirrors the federal provisions. Rhode Island Department of HumanServices Manual § 0352.15 (DHS Manual). In order to be eligible for MA benefits, the applicant
 "must have a permanent physical or mental impairment, disease or loss, other than blindness, that substantially precludes engagement in useful occupations . . . within his/her competence.
 A physical or mental impairment is an impairment which results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable, clinical and laboratory diagnostic techniques." DHS Manual § 0352.15.
The applicant is disabled if he or she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment [that] has lasted, or can be expected to last for a continuous period of not less than (12) months." DHS Manual § 0352.15.
To make this determination of disability, the Hearing Officer engages in a five step sequential inquiry, which follows the five-step federal process set forth in 20 C.F.R. § 416.920. The procedure is as follows:
 1. Is the claimant engaged in substantial activity?
 2. If not, is the impairment severe?
 3. If severe, does it meet or equal an impairment listed in the Supplemental Security Income (SSI) regulations?
 4. If it does not meet or equal SSI regulations, does the impairment prevent the claimant from doing past relevant work?
 5. Considering age, education, work experience and residual functioning capacity, does the impairment(s) prevent the claimant from doing other work in the national economy? See 20 C.F.R. § 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S.Ct. 2287, 2290-91, 96 L.Ed.2d 119, 126-27 (1987).
DHS is not required to complete all five steps of the evaluation but may end the inquiry at any point and conclude that the applicant is not disabled.
Severity Standard
The Plaintiff contends that DHS used the wrong severity standard in step two of the evaluation process. Plaintiff claims that step two is merely a "de minimis device" used to screen out frivolous claims or slight abnormalities. DHS asserts that the Hearing Officer, after considering all the testimony and medical records, correctly determined that Plaintiff's impairments were not severe as there was no medical verification of the severity of his impairments and the expression of symptoms alone cannot be the basis for a finding of severity.
At the second stage of the evaluation process, DHS considers the medical severity of an applicant's impairment.20 C.F.R. § 416.920. Step two is a de minimis standard in which the agency determines whether the medical evidence demonstrates that the claimant has any limitations in his or her ability to perform basic work-related activity. Samuels, Social Security DisabilityClaims: Practice Procedure § 22:61 (2d ed. 1994); Bowen, 482 U.S. at 153, 107 S.Ct. at 2297, 96 L. Ed.2d at 134. To satisfy this requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The Hearing Officer considers all symptoms, including pain, and the extent to which signs and laboratory findings confirm these symptoms. Zeytuntsyan v.Sullivan, 1992 U.S. App. LEXIS 18421, *6 (9th Cir. 1992). A three part "pain standard" applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." Id; 20 C.F.R. § 416.929(b).
In determining the severity of Plaintiff's impairments, the Hearing Officer found that either his impairments were not medically verified or that they were not severe because they are being controlled with medications. Although the Plaintiff underwent surgery for testicular cancer, the Hearing Officer discerned no evidence that there has been a recurrence or that he has work impairments as a result of the surgery. Plaintiff's diabetes and hypertension were also not considered severe because they are controlled with medications, as well as Plaintiff's seizures, with the exception of two emergency situations when the Plaintiff was either not on medication or had switched medication. "Impairments that are controllable or amenable to treatment do not support a finding of total disability." Huttonv. Apfel, 175 F.3d 651, 655 (8th Cir. 1999) (citing Kislingv. Chater, 105 F.3d 1255, 1257 (8th Cir. 1997)); see alsoMittelstedt v. Apfel, 204 F.3d 847, 852 (8th Cir. 2000) (finding claimant's seizure disorder, as well as his heart and respiratory conditions not severe because they are controlled by medications). Accordingly, there was sufficient competent evidence in the record for the Hearing Officer to conclude that Plaintiff did not suffer from a severe impairment with respect to his testicular cancer, hypertension, diabetes, and seizures.
The finding that Plaintiff does not suffer from migraines, however, is not supported by substantial evidence. Although the CT scan found no significant abnormality, Plaintiff's treating physician diagnosed him with migraine headaches and prescribed medications for such migraines. The Hearing Officer noted that the applicant's impairments must be the result of abnormalities that can be proved by medically acceptable clinical and diagnostic techniques and that the expression of symptoms alone cannot be the basis for a finding of severity. However, "[t]he absence of unequivocal evidence of migraine headaches does not mean that claimant does not suffer from them, as there is no `dipstick' laboratory test for such headaches." Guinn v.Chater, 1996 U.S. App. LEXIS 9992, *7 (10th Cir. 1996) (citing Sisco v. United States Dep't of Health Human Servs.,10 F.3d 739, 744 (10th Cir. 1993)). "Migraine headaches do not stem from a physical or chemical abnormality which can be detected by imaging techniques or laboratory tests, but are linked to disturbances in cranial blood flow." Federman v.Chater, 1996 U.S. Dist. LEXIS 2893 *4 (S.D.N.Y. 1996). "The diagnosis of migraine headaches is not confirmed or reinforced by the presence of anatomical abnormalities in the head or eye," but is based on the symptom patterns in a patient "`who shows no evidence of intracranial pathological changes.'" Id. at 5-6 (quoting The Merck Manual 1426 (16th ed. 1992)). Thus, the absence of any clinically significant brain abnormality is not inconsistent with a patient having migraines or being disabled.Id. at 6.
In the instant case, the Hearing Officer only considered Plaintiff's CT scan in finding that he did not suffer from migraines. She did not take into account any other evidence in the record, such as doctor's notes of Plaintiff's visits to a neurology clinic in which he complained of having headaches seven days a week, some severe enough to cause him to become bedridden. Medical signs are often the only means available to prove the existence of migraines. Ortega v. Chater, 933 F. Supp. 1071, 1075 (S.D. Fla. 1996). The Hearing Officer must look to the record for signs and symptoms suffered by the Plaintiff and determine whether those symptoms are medical signs associated with severe migraine headaches. Essentially, the Hearing Officer must determine whether Plaintiff's physicians set forth the medical signs and symptoms sufficient to justify the diagnosis and treatment of migraine headaches. See Lemoine, 113 R.I. at 291, 320 A.2d at 292 (quoting State ex rel. Gunstone v. StateHighway Comm'n, 434 P.2d 734, 735 (Wash. 1967)) (remand appropriate where agency may have acted on incomplete or inadequate information or failed to give adequate consideration to certain evidence). Accordingly, this matter will be remanded for a determination of the existence of an impairment.
If it is found that Plaintiff's migraines amount to an impairment, a new hearing must be conducted to evaluate the severity of Plaintiff's migraines, by taking into account his symptoms, including pain. In evaluating the intensity and persistence of pain symptoms, and determining the extent to which those symptoms limit an individual's capacity for work, a Hearing Officer considers "all of the available evidence, including your medical history, the medical signs and laboratory findings, and statements from you, your treating or examining physician . . . or other persons about how your symptoms affect you."20 C.F.R. § 416.929 (c). Other factors relevant to an analysis of pain symptoms are
 "(i)Your daily activities;
 (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
 (iii) Precipitating and aggravating factors;
 (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
 (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
 (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
 (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. § 416.929 (c)(3).
A Hearing Officer also "will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your medical history, the medical signs and laboratory findings, and statements by your treating or examining physician . . . about how your symptoms affect you."20 C.F.R. § 416.929 (c)(4). If the Hearing Officer decides not to credit such testimony, he or she must articulate explicit and adequate reasons for doing so. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).
Weight of Physician's Opinion
Plaintiff next argues that DHS failed to give the physician's opinion controlling weight as federal law requires. DHS argues that the physician's opinion was not entitled to such great weight because Dr. Wehbe's assessment was not supported by medically acceptable clinical and laboratory diagnostic techniques. DHS also asserts that the physician's opinion should not be determinative because the case record includes substantial evidence that is inconsistent with the physician's assessment.
In determining whether an applicant is disabled, the opinion of a treating physician is entitled to controlling weight if it is found that the physician's opinion "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(d)(2). The treating physician's opinion is not always dispositive.20 C.F.R. § 404.1527(d)(2). Furthermore, great deference is given to the factual findings and conclusions of the Hearing Officer. Bunchv. Bd. of Review, 690 A.2d 335, 337 (R.I. 1997). Unless the findings and conclusions are "totally devoid of competent evidentiary support in the record," this Court will not disturb them. Id.
In the instant case, the Hearing Officer acknowledged and reviewed the two MA-63 forms prepared by Dr. Wehbe. Although both forms list extreme mental and physical limitations, the Hearing Officer found that such conclusions were not supported by the rest of the medical record. The Hearing Officer determined that Dr. Wehbe's opinions were not corroborated by acceptable clinical and laboratory diagnostic techniques, such as objective medical testing or a psychological or psychiatric evaluation. Specifically, the Hearing Officer relied on the CT scan to reach her conclusion that Plaintiff does not suffer from migraines. However, as discussed supra, migraines cannot be detected by imaging techniques or laboratory tests. Migraines are diagnosed based on medical signs and symptoms, which are contained in the record. Accordingly, on remand, the Hearing Officer must take into account the treating physician's opinion with respect to the migraines.
 CONCLUSION
After a review of the entire record, this Court finds that the Hearing Officer's decision that the Plaintiff did not suffer from a severe impairment with respect to testicular cancer, hypertension, diabetes and seizures is supported by the reliable, probative, and substantial evidence on the record. That finding is affirmed. However, this Court remands this matter to the agency for consideration of whether the Plaintiff's migraine headaches constituted an impairment. If the agency finds an impairment, it is to conduct a new hearing with respect to the severity of the migraines consistent with this decision. This Court will retain jurisdiction. Accordingly, the Hearing Officer's decision is affirmed in part and remanded in part.