[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Plaintiff Vadim Sinin has appealed an adverse decision of the Department of Human Services (DHS) that denied his application for medical assistance which had been based on his claim of permanent disability. Jurisdiction is pursuant to G.L. 1956 § 42-35-15. For the reasons set forth below, the decision of the DHS is reversed and the matter is remanded with directions.
 FACTS AND TRAVEL
The plaintiff is a thirty-three year old man whose left leg was amputated ten inches above the knee in 1975 as a result of injuries sustained in a car accident when he was a youngster. Sinin, who had been a sewing machine operator, has been unemployed since 2000.
During 2000 Sinin developed recurring abscesses at the point of amputation as well as in his groin area. Typically, the abscesses form during a week-long period; and, when fully developed, they are extremely sensitive and painful, draining pus and blood for three to four days. After the abscesses have drained, Sinin experiences about two weeks of pain relief if he does not wear his prosthesis. If he does wear it, the pain returns after about a week. He applies medicated cream to the affected areas, takes pain medication, including codeine, and constantly changes the bandages on the open sores. Eventually, the cycle repeats itself. When his abscesses are causing him discomfort, Sinin cannot use his cane and must attempt to ambulate with the aid of crutches. Because of this recurring condition, he is obliged to live with his parents, who tend to much of his daily needs.
Sinin's history of infected, recurring abscesses was well documented in the medical records that were submitted to the DHS. In April of 2002, Dr. Olga Tverskaya, the plaintiff's treating physician, diagnosed Sinin with recurrent abscesses of the upper area of his left leg, and she prescribed antibiotics to combat the infection. In May of that year surgery was required to treat the infected area further, but additional lesions and ulcerations arose in August and October of that year.
In May of 2003, Dr. Tverskaya completed a Physician Examination Report for Determination of Disability (MA-63), wherein she noted that Sinin suffered thigh pain because his prosthesis did not fit correctly, and she again referenced the recurring infection from the abscesses. In addition, she indicated that during an eight-hour workday, Sinin could not walk, stand, bend, lift, or carry at all, and that he could only sit for one to two hours at a time. Dr. Tverskaya reported that she expected the condition to last over twelve months. As a sewing machine operator, Sinin was required to sit for four-hour stints daily and lift ten pounds on a regular basis.
In June of 2003, the plaintiff received a new socket and other parts for his prosthesis in the hopes that it would fit better. In August, 2003, however, Dr. Tverskaya noted that Sinin was still experiencing a recurrent left inner thigh abscess that interfered with wearing his prosthesis. In an evaluation dated September 12, 2003, she concluded that Sinin suffered from an impairment listed by the Social Security Administration, specifically, amputation of "[o]ne or both lower extremities at or above the tarsal region, with stump complications resulting in medical inability to use a prosthetic device to ambulate effectively, as defined in 1.00B2b, which have lasted or are expected to last for at least 12 months." See 20 C.F.R. 404 subpt. P, App. 1, 1.05B.
On October 3, 2003, after a September 18, 2003 hearing, the DHS denied Sinin's application for medical assistance resulting from his claimed permanent disability. In his decision, the hearing officer concluded,inter alia, that although Sinin's impairment is "severe," the "medical record does not support the appellant's claim of inability to use a prosthesis due to persistent infection," and that his "impairments do not meet or equal, either singularly or in combination, the Social Security Administration's Listings of Impairments." The hearing officer also concluded that notwithstanding Sinin's severe impairment, he had a "demonstrated ability" to return to work as a sewing machine operator. The hearing officer thus concluded that Sinin was capable of his past work, found him not to be disabled, and denied his application for medical assistance.
 STANDARD OF REVIEW
Review of an agency decision by the Superior Court is governed by the Administrative Procedures Act, G.L. 1956 §§ 42-35-1 — 42-35-18. The standard of review is set forth at § 42-35-15(g):
 "The Court shall not substitute its judgment for that of the agency as to the weight of the evidence on the questions of fact. The court may affirm a decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
Pursuant to that standard, this Court sits as an appellate tribunal when considering agency decisions. Mine Safety Appliances Co. v. Berry,620 A.2d 1255, 1259 (R.I. 1993). The Court's review is based on the certified record, which is examined to determine whether the decision below is supported by any legally competent evidence. Johnston AmbulatorySurgical Associates, Ltd. v. Nolan, 755 A.2d 799, 805 (R.I. 2000). The Court is obliged to affirm the agency's decision if it is supported by sufficient competent evidence; that is to say, that the record is not "totally void of competent evidentiary support in the record," or that the decision is supported by reasonable inferences that might be drawn from evidence in the record. Bunch v. Bd. of Review, 690 A.2d 335, 337
(R.I. 1997); Millerick v. Fascio, 120 R.I. 9, 384 A.2d 601 (1978). Absent clear error, the Court ordinarily will not substitute its judgment for that of the agency with respect to credibility or weight of the evidence, Center for Behavioral Health v. Barros, 710 A.2d 680, 684
(R.I. 1998). Questions of law are not binding upon the court and are reviewed de novo. Narragansett Wire Co. v. Norberg, 118 R.I. 596,376 A.2d 1, 6 (R.I. 1977); Bunch, 690 A.2d at 337.
 ELIGIBILITY FOR MEDICAL ASSISTANCE
Medical assistance benefits are provided under a federally funded program that is part of the federal Social Security Act, and the DHS administers the program on a statewide level in Rhode Island. Tierney v.Dep't of Human Svcs., 793 A.2d 210 (R.I. 2002); 42 U.S.C. § 1396. Participating states must comply with the federal Act and its regulations. Schweiker v. Gray Panthers, 453 U.S. 23 (1981). In Rhode Island, the DHS determines whether individuals are eligible for benefits by applying Social Security guidelines promulgated at 20 C.F.R. §§ 416.901-416.998. A five-part inquiry is employed in each case:
 1. Is the claimant engaged in substantial gainful activity?
 2. If not, is the impairment severe?
 3. If severe, does it meet or equal an impairment listed in the Supplemental Security Income (SSI) regulations?
 4. If it does not meet or equal SSI regulations, does the impairment prevent the claimant from doing past relevant work?
 5. Considering age, education, work experience and residual functional capacity, does the impairment(s) prevent the claimant from doing other work in the national economy? 20 C.F.R. § 416.920(a)(4).
If an impairment is found, it must last or be expected to last twelve continuous months (or end in death). 20 C.F.R. § 416.909. The claimant bears the burden of proof as to the first four steps; the burden shifts to the agency to demonstrate that the claimant can perform work in the national economy other than his or her past relevant work. See, Pope v.Shalala, 998 F.2d 473, 477 (7th Cir. 1993).
The first two issues of the five-part evaluation are not in dispute: Sinin is not presently working and has not worked since 2000, and the DHS hearing officer concluded that the disability is severe. The parties disagree at stage three.
In seeking reversal of the DHS officer's conclusions, the plaintiff advances two principal legal theories: (1) the hearing officer came to erroneous conclusions because he failed to give proper weight to the opinion of the plaintiff's treating physician; and (2) the hearing officer failed to make necessary findings of fact, rendering the decision arbitrary and capricious.[1]
At step three of the inquiry the hearing officer concluded that Sinin's impairments did not meet or equal, either singly or in combination, a listed impairment. He noted that Sinin was diagnosed with a recurrent abscess on April 3, 2002, that he underwent an excision on May 23, 2002, and then sought no further treatment until May 9, 2003. On that date, the plaintiff visited Dr. Tverskaya to complain that his prosthesis did not fit properly, and she completed a MA-63 form for is medical assistance application. The hearing officer further noted that the only medical problem the plaintiff had identified on his AP-70 form was his leg amputation. The hearing officer noted that Sinin was treated again on August 19, 2003 for groin pain, and that Dr. Tverskaya had indicated that "patient has recurrent left inner thigh abscess that interferes with wearing of left leg prosthesis." Based on that evidence, the hearing officer rejected, as not credible "given the medical record," Sinin's testimony that his ability to wear the prosthesis was limited during the period in question.
Sinin argues that he is, in fact, disabled at step three of the evaluation because his impairment meets SSA listing 1.05: an amputation of "one or both lower extremities at or above the tarsal region, with stump complications resulting in medical inability to use a prosthetic device to ambulate effectively, as defined in 1.00B2b, which have lasted or are expected to last for at least 12 months." 20 C.F.R. 404, Subpt. P App. 1.05. "Effective ambulation is an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. Pt. 404, Subpt. P App. 1.00B2b. This is generally indicated by inability to ambulate independently without the use of a hand held assistive device that limits the functioning of both upper extremities (e.g., crutches). Id.
Sinin argues that the conclusion of his treating physician, Dr. Tverskaya — that his impairment meets the definition laid out in listing 1.05, as well as the twelve month durational requirement — is uncontroverted in the record and supported by the other evidence presented, and that her opinion should have been given controlling weight. He further contends that the hearing officer's conclusion that his impairment did not meet a listed impairment is clearly erroneous in light of the reliable, probative, and substantial evidence, and should be reversed, pursuant to § 42-35-15(g)(5). The Court agrees.
The Code of Federal Regulations indicates the weight to be accorded to medical opinions when determining eligibility for benefits:
 "Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairments(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 416.927(d)(2).
It is the view here that the hearing officer erroneously gave little or no weight to Dr. Tverskaya's September 12, 2002 evaluation that Sinin's impairment met the SSA disability listing. The hearing officer was authorized to discount that opinion only if he found that it was not supported by medically acceptable clinical and laboratory diagnostic techniques and was inconsistent with the other substantial evidence. The record below does not admit of any such contradicting evidence, and the hearing officer was clearly mistaken by not according controlling weight to Dr. Tverskaya's opinion.
Moreover, all of the evidence adduced at the hearing and in the record is consistent with and supports Dr. Tverskaya's ultimate opinion that Sinin's impairment met the impairment listed at 1.05. The records, spanning two years, indicate an "acute and chronic inflammation," a "recurring infection," a "recurrent left inner thigh abscess that interferes with him wearing his prosthesis." Accordingly, the Court finds that the hearing officer's conclusion that the plaintiff does not suffer from a listed impairment is clearly erroneous in light of the reliable, probative, and substantial evidence. See Millerick, 120 R.I. at 16,384 A.2d at 604 (upholding trial justice's reversal of a denial of benefits where the agency did not rely on the opinion of the treating physician).
 * * *
The plaintiff has also argued that he is disabled at step five of the evaluation process because the evidence indicates that he can only sit for one or two hours during an eight-hour work day, and that he has even less ability to stand, walk, bend, stoop, lift and carry. These limitations, he contends, render him incapable of performing any sedentary work that requires him to lift as much as ten pounds, sit for six hours, and occasionally walk and stand. See 20 C.F.R. § 416.967(a).
The hearing officer did not progress to step five of the evaluation because he concluded that the plaintiff's impairment would not prevent him from doing his past relevant work as a sewing machine operator. He decided that Sinin "has a demonstrated ability to do this work despite his amputation," and that there was no indication that with treatment of the abscess he could not return to work.
The hearing officer's finding that the plaintiff has a "demonstrated ability" to return to his past relevant work is simply not supported by the competent evidence. Sinin's job as a sewing machine operator required him to sit for four hours a day and to lift ten pounds on a regular basis. Dr. Tverskaya concluded that Sinin is unable to do either of those tasks, and her conclusions are uncontradicted by any record evidence. Accordingly, her opinions are entitled to controlling weight. Therefore, the hearing officer's finding that Sinin has a "demonstrated ability" to return to his former job is clearly erroneous. See Hidalgo v. Bowen,822 F.2d 294, 297 (2d Cir., 1987) (reversing an administrative law judge's determination that a claimant could return to his past employment as not supported by substantial evidence because it ignored the weight required to be given to the views of the medical experts who were actually treating the claimant).
Whether Sinin, notwithstanding his disability, is so impaired as to render him incapable of performing any other work is a question that was not fully addressed below, because the hearing officer never reached step five of the evaluation process. Although Sinin asserts that he is functionally unable to undertake any other type of work, that assertion must be more fully explored at the agency level.
Accordingly, for all of the foregoing reasons, this Court reverses the DHS decision with respect to step three of the evaluation process, and directs the agency to enter a finding that the plaintiff's condition meets the requisite level of impairment at that stage. The matter is remanded to the DHS so that an assessment may be made of the plaintiff's residual functional capacity, if any there be, as described in step five of the evaluation process.
Counsel shall submit an appropriate order for entry.
[1] The plaintiff also claims that the hearing officer neglected to consider the plaintiff's pain symptoms, an argument this Court finds unnecessary to reach.