[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is an appeal by Bay Buick Inc. (Defendant) from an April 8, 2003 final order of the Director of the Department of Administration, Office of the Administrator of Adjudication (Director), confirming an adverse decision of the Motor Vehicle Dealer's License and Hearing Board (Board). Defendant seeks reversal of the decision of the Board, requiring Defendant to refund the purchase price of a vehicle to Denise Brindamour (Plaintiff) for failing to have a valid inspection sticker on the vehicle. Jurisdiction in this Court is pursuant to G.L. 1956 §§ 31-5-2.1(d), 42-35-15.
 FACTS AND TRAVEL
Defendant is a motor vehicle dealership in East Greenwich, Rhode Island, licensed and authorized by the Board to sell new and used vehicles under §§ 31-5-5 to 31-5-9. On April 22, 2002, Plaintiff purchased a 1996 Oldsmobile Sierra from Defendant for $6,200. The vehicle had an inspection sticker from November 2001. Approximately two weeks later, Plaintiff brought the car to her mechanic, who had recommended Defendant to her, to inspect the vehicle. In her complaint to the Board, Plaintiff contended that her mechanic "found oil in the radiator and the coolant reservoir, all fluids were gone, the oil was dirty and low," and that her "mechanic suggested that these were signs of a head gasket problem and sent [her] back to [Defendant]." (Def.'s Ex. E.)
That same day, May 4, 2002, Plaintiff dropped her car at Defendant's dealership, with 61,562 miles on the car, and she relayed her mechanic's findings. Defendant examined the vehicle, tested the coolant system, and determined that the coolant should be drained and replaced. After replacing the coolant, Defendant pressure tested the system for leaks. Defendant did not find a problem with the head gasket, but instead noted a problem with the lower intake gasket leaking on the left-hand side of the vehicle. When Plaintiff returned on Monday, May 6, she stated she was upset that Defendant had flushed the system instead of replacing the head gasket, and she left the car with Defendant, returning home with a loaned vehicle.
On May 7, Plaintiff both called and visited Defendant's place of business, and said that she wanted her money back because Defendant would not replace her head gasket. At that time, Defendant offered to replace the head gasket, which in their assessment was not broken, if Plaintiff would pay half the cost. Plaintiff refused, stating Defendant's warranty was for 100% parts and labor. On May 14, Plaintiff signed her complaint against Defendant, noting a car mileage of 61,726, and she filed the complaint on May 20, 2002. Meanwhile, Defendant again offered to fix the head gasket problem if Plaintiff would pay half. On May 18, Plaintiff brought her car back to Defendant's mechanics because Defendant had notified her that she should get the car off the road and the lower intake gasket repaired before it "got worse." (July Tr. at 12.) Plaintiff attached a note to the car stating, "I am leaving the 96 Oldsmobile Cierra as it is not driveable. I do not want you to do any work on my vehicle until I give you the approval on Monday 5/20. I need to speak to you first." (Def.'s Ex. B.)
Defendant called Plaintiff on May 20, but she refused any service on her vehicle. Defendant inspected the vehicle at this time, noting a mileage of 61,905. After several attempts to get Plaintiff to agree to service, Defendant reiterated its willingness to fix the lower intake gasket in a letter dated May 21, 2002, but Plaintiff still refused. At the hearing before the Board, Plaintiff claimed that she did not want Defendant to fix the car because she did not trust Defendant's mechanics; she also believed that if they tried to fix the vehicle it would have more problems. Plaintiff took the car back, and continued to drive it until it died on August 24, 2002, with 64,844 miles on it.
Plaintiff and Defendant presented their cases before the Board on July 24, 2002. After hearing from both sides and questioning both Plaintiff and Defendant, the Board put its decision on the record. The Board found in favor of Defendant, and stated in the record:
 "that [Plaintiff] should take the vehicle back to [Defendant] and give them the opportunity to fix it. [Defendant's] testing is contrary to what [Plaintiff] testified, in that, [Plaintiff's] mechanic suggested the head gasket problem. However [Defendant] pressure tested it, which [Plaintiff's] mechanic did not. And [Defendant] found that the head gasket was not the problem, and that it was a lower intake gasket, and they are willing to fix that at no charge to the consumer. So the motion is that [Plaintiff] should bring the vehicle back to [Defendant] and allow them to repair the vehicle. If [Plaintiff] has any issues with the repairs at that point, [Plaintiff] is free to come before this Board again, if there is [sic] still indications that it may be a head gasket. . . ." (July Tr. at 25-26.)
Additionally, a member of the Board noted that the invalid inspection sticker was "more of a technicality than really the major issue before" the Board. (July Tr. at 25.) The Board member stated that he did not find any violation with regard to the expired inspection sticker.
The Board's written decision, dated August 2, 2002, stated that "after hearing testimony and reviewing documents, the Board ruled that [Defendant] repair the problem with the lower intake gasket to the 1996 Oldsmobile Ciera [sic], at no cost to [Plaintiff]." (Decision of Board, Def.'s Ex. G.) Additionally, the written decision stated that the car "had been inspected twice before the sale to [Plaintiff]." (Decision of Board, Def.'s Ex. G.) The Board also noted that Defendant "pressure-tested the system, which was not done by [Plaintiff's] mechanic." (Decision of Board, Def.'s Ex. G.) Furthermore, the Board found Defendant violated § 31-5-11 (1), (3), and (10).
Plaintiff appealed the Board's decision to the Director, and Hearing Officer Margaret Lynch-Gadaleta (Hearing Officer) rendered an appellate decision on October 9, 2002. The Hearing Officer noted the facts and documents seemed to contradict the finding of the Board with regard to the inspection sticker. Additionally, the Hearing Officer found that "the final order issued by the Board does not contain any findings of facts to support" the conclusion that Defendant violated § 31-5-11 (1), (3), or (10). (Decision of Director, Def.'s Ex. H at 5.) The Hearing Officer remanded the case to the Board for a "re-hearing and/or clarification of [the Board's] decision in accordance with RIGL 42-35-12." (Decision of Director, Def.'s Ex. H at 5.)
On remand, the Board held a hearing on December 12, 2002. At the start of the hearing, the Board read the decision remanded to them and determined that none of the members recalled the facts of the case. The Board then asked the parties to present to them again, "so that [the Board could] have a better understanding of what's going on, so that [the Board is] ruling properly." (Dec. Tr. at 4.) The Chairman of the Board asked to have Plaintiff and Defendant "present the facts of what had transpired." (Dec. Tr. at 4.) Instead of repeating the testimony that she had given at the prior hearing, Plaintiff asked if she could read the letter of appeal of the first Board's decision. In the letter, Plaintiff focused on the lack of inspection sticker and stated that members of the Motor Vehicle Division told her she could get her money back for lack of a valid inspection sticker. Plaintiff also said that the car was "a lemon with a head gasket problem, which is something that [Defendant] denied right along." (Dec. Tr. at 6.) She added that the car overheated and "died" on August 24, 2002. Plaintiff further mentioned specific tests her mechanic allegedly ran on her vehicle showing a head gasket problem, tests not mentioned in the first hearing. Defendant pointed out to the Board that the "initial complaint had nothing to do with an inspection sticker," and that the "car should have been fixed at the time [Plaintiff] brought the car [to Defendant] on May 18th." (Dec. Tr. at 8-9.) The Board listened to a portion of the tape from the first hearing, then proceeded to ask more questions of Plaintiff. Plaintiff admitted that she "didn't like the decision" of the Board the first time, so she never brought her car in for service, and she continued to drive it until it died on August 24, 2002. (Dec. Tr. at 14.)
The Board's decision on record was "to order repurchase of the vehicle by [Defendant] due to the fact that at the time of sale in April the inspection sticker was over 90 days old." (Dec. Tr. at 25.) The Board also fined Defendant $100 for violating the statute and regulations of the Board. In its written decision, the Board stated:
 "After rehearing testimony and reviewing all documents, it was the decision of the board to void the sale of the 1996 Oldsmobile Cierra and to order [Defendant] to refund the full purchase price to [Plaintiff] within seven (7) days of [Defendant receiving the] written decision.
 The board found that the vehicle was sold without a valid inspection sticker, which is a violation of Rhode Island General Laws [§ 31-38-1(b)]. A fine of $100 has been imposed by the board as a result of its finding. The fine of $100.00 is to be paid within ten (10) business days upon [Defendant receiving the] written decision." (Decision of Board, Def.'s Ex. I.)
Defendant appealed this decision to the Director, and the Hearing Officer rendered her appellate decision on April 8, 2003. The Hearing Officer noted the Board's findings: that the Board found that Defendant "sold [the vehicle] without a valid inspection sticker, a violation of R.I.G.L. Section 31-38-1(b)," that the "Board voided the sale and ordered the dealer to refund the full purchase price within seven days," and noted that the Board imposed a $100 fine on Defendant because of "its failure to comply with R.I.G.L. Section 31-38-1(b) and Section 1.16 of the Rules and Regulations Regarding Dealers, Manufacturers, and Rental Licenses." (Decision of Director, Def.'s Ex. J at 2.) The Hearing Officer upheld the Board's order as "supported by evidence contained in the record," and stated that "[t]he Board was well within its authority to void the sale, as well as impose the additional fine." (Decision of Director, Def.'s Ex. J at 4.)
Defendant appealed the decision of the Hearing Officer to this Court. On appeal, Defendant contends that the Hearing Officer was clearly erroneous in affirming the Board's January 3, 2003 decision for six reasons. Defendant's arguments are that the Board exceeded its statutory authority by voiding the sale; the Board's decision to void the sale was an abuse of discretion; the Board's January decision was clearly erroneous in view of the reliable and probative evidence on the whole record; the January 3, 2003 decision was made in violation of § 42-35-11; the Board's decision violates § 42-35-12; and refunding the purchase price to Plaintiff would result in unjust enrichment and an inequitable result.
 STANDARD OF REVIEW
The Superior Court has appellate jurisdiction to review a decision of the Motor Vehicle Dealer's License and Hearing Board, as well as other state administrative agencies, and is controlled by § 42-35-15(g). Section 42-35-15 provides in pertinent part:
 "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or [sic] law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of an administrative agency under §42-35-15, the Superior Court acts in the manner of an appellate court with a limited scope of review. Mine Safety Appliances v.Berry, 620 A.2d 1255, 1259 (R.I. 1993). This review is confined "to an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision." Johnston Ambulatory Surgical Assocs., Ltd. v. Nolan,755 A.2d 799, 805 (R.I. 2000) (quoting Barrington Sch. Comm. v.R.I. State Labor Relations Bd., 608 A.2d 1126, 1138 (R.I. 1992)). If the agency based its decision on sufficient and competent evidence in the record, this Court must uphold the agency's decision, Johnston Ambulatory, 755 A.2d at 805 (citingBarrington Sch. Comm., 608 A.2d at 1138), and the trial judge "may not substitute his or her judgment for that of the administrative agency," Bunch v. Bd. of Review, 690 A.2d 335,337 (R.I. 1997). This is true even in circumstances where this Court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency.Berberian v. Dep't of Employment Sec., 414 A.2d 480, 482 (R.I. 1980). "Questions of law, however, are not binding upon the court and may be reviewed to determine what the law is and its applicability to the facts." Narragansett Wire Co. v. Norberg,118 R.I. 596, 607, 376 A.2d 1, 6 (R.I. 1977) (citations omitted). The Court may be guided by principles of equity when reviewing questions of law. See DeFalco v. Voccola, 557 A.2d 474, 476
(R.I. 1989).
When a trial judge reviews a decision of an agency, the judge can affirm the decision, reverse the decision, or remand the case for further review. Birchwood Realty, Inc. v. Grant,627 A.2d 827, 834 (R.I. 1993) (citing § 42-35-15(g)). The trial judge may reverse the findings of the agency "only in instances wherein the conclusions and the findings of fact are `totally devoid of competent evidence support in the record,' or from the reasonable inferences that might be drawn from such evidence." Bunch,690 A.2d at 337 (quoting Milardo v. Coastal Res. Mgmt. Council,434 A.2d 266, 272 (R.I. 1981)) (citing Guarino v. Dep't of Soc.Welfare, 122 R.I. 583, 588-89, 410 A.2d 425, 428 (1980)). The Superior Court also has the authority to remand a case "to correct deficiencies in the record and thus afford the litigants a meaningful review." Lemoine v. Dep't of Mental Health,Retardation, Hosps., 113 R.I. 285, 290, 320 A.2d 611, 614
(1974).
 THE DEFENDANT'S APPEAL
In its appeal, Defendant makes six arguments: first, that the Board exceeded its statutory authority by voiding the sale; second, that the Board's decision to void the sale was an abuse of discretion; third, that the Board's January decision was clearly erroneous in view of the reliable and probative evidence on the whole record; fourth, that the January 3, 2003 decision was made in violation of § 42-35-11; fifth, that the Board's decision violates § 42-35-12; and sixth, that refunding the purchase price to Plaintiff would result in unjust enrichment and an inequitable result. The first and second arguments relate to the question of whether the Board has the ability to refund the purchase price to a consumer who purchased a vehicle without a valid inspection sticker. The third and fourth arguments center around what constitutes the "whole" record on a remand for a rehearing before the Board. The fifth argument relates to the written orders of the Board. The sixth argument concerns principles of equity, principles which relate to the Board's findings of fact and conclusions of law. As such, the fifth and sixth arguments will be considered together.
 The Board's Ability to Refund Full Purchase Price
Defendant contends that the Board exceeded its statutory authority by voiding the sale and, additionally or in the alternative, the Board's decision to void the sale was an abuse of discretion. The Board responds by stating that the "Rules and Regulations promulgated pursuant to § 31-5-2 clearly provides for full restitution of any money as a result of an unconscionable practice or illegal transaction." (Bd.'s Memo. Opp'n Judicial Rev. at 3.) The Board contends that a sale of a vehicle without a valid inspection sticker is an illegal transaction.
The Board has the authority to choose a proper and appropriate remedy for violations by motor vehicle dealers. Section 31-5-14. In reviewing the remedy of an agency, this Court may only determine whether the Board "made `an allowable judgment in [his] choice of remedy.'" Butz v. Glover Livestock Comm'n Co.,411 U.S. 182, 189 (1972) (quoting Jacob Siegel Co. v. FTC,327 U.S. 608, 612 (1946)). This Court may not substitute its judgment for that of the agency, and is limited to determining whether the Board's decision was arbitrary and capricious or characterized by an abuse of discretion. See Rocha v. Pub. Utils. Comm'n,694 A.2d 722, 726 (R.I. 1997). Under the arbitrary and capricious standard, unevenness in the application of a sanction does not invalidate its application; however, an excessive variance is evidence of an arbitrary and capricious action. Cross v. UnitedStates, 512 F.2d 1212, 1217 n. 8 (4th Cir. 1975).
The Board's powers and duties are clearly stated in § 31-5-2, providing that the Department of Administration (Department) has the ability to "make and to issue rules and regulations" pursuant to §§ 31-5-1 to 31-5-20, 31-5-33 to 31-5-39, and also "to protect public interest." Section 31-5-2. Pursuant to this section, the Department promulgated the Rules and Regulations Regarding Dealers, Manufacturers and Rental Licenses (Rules and Regulations).[1] 1 CRIR 2A, Rule 01100 041 at 3 (2002). Section II (Purpose) of the Rules and Regulations provides:
 "(a) These Rules and Regulations are being promulgated to protect the interests of the public when dealing with motor vehicle dealers in Rhode Island. Any violation of these provisions may result in:
 (1) revocation of a dealer's license or
 (2) suspension of a dealer's license or
 (3) suspension or loss of a dealer's registration plates or
 (4) full restitution of any money and/or motor vehicle repairs and parts suffered by any purchaser as a result of an unconscionable practice or illegal transaction as may be determined by the Department of Transportation, and or
 (5) a fine imposed in accordance with Rhode Island General Laws 31-5-14(AC), as amended." (Emphasis added.)
The Rules and Regulations do not have a provision requiring a used car to have an inspection sticker fewer than ninety days old.[2] From the language of the above section, full restitution is only available for violation of the official Rules and Regulations, not of other regulations regarding the sale of used motor vehicles. References exist in the transcripts of the hearings to such a regulation in existence, but aside from the Hearing Officer's reference to "Section 1.16" of the Rules and Regulations, which has not been brought to the attention of this Court and does not appear to exist, this Court is unclear as to what regulation the Board is referring.
In response to Defendant's argument, the Board states that the Rules and Regulations clearly allow full restitution of any money as a result of an unconscionable practice or illegal transaction. However, even if the above section would apply to regulations contained outside the official Rules and Regulations, the Board's award of full restitution is discretionary because the Rules and Regulations provide that full restitution "may" be available only as a result of an unconscionable practice or illegal transaction. The Board in its written decision did not state that Defendant engaged in an unconscionable practice or illegal transaction, as argued by the Board in the instant appeal. In the Board's decision, Defendant was found in violation of § 31-38-1, which "shall constitute a deceptive trade practice under the terms of chapter 13.1 of title 6." G.L. 1956 § 31-5.3-2. The penalty associated with a violation of § 31-38-1(b) provides for a fine, not full restitution of the purchase price. See § 31-38-11
(imposing a fine for violations of § 31-38-1). Under § 31-5.3-2, the court may order restitution if necessary, including injunctions or additional orders. Section 31-5.3-2 (noting all public and private remedies in chapter 13.1 of title 6 available for violations of § 31-38-1). The Board ordered full restitution apparently out of their authority under the Rules and Regulations. Accordingly, the Board acted in excess of its statutory authority.
 What Constitutes the Whole Record
Defendant argues that the Board's holding following the December hearing was clearly erroneous in view of the entire record, and that the decision was in violation of § 42-35-11. Defendant claims that the Board did not consider the evidence on the whole record because the Board did not consider the entire transcript tape of the first hearing as evidence in the second hearing.
The whole record, however, does not consist of the first hearing, as the Board noted in its response. The Director instructed the Board to clarify its decision with "a re-hearing and/or clarification of its decision." (Decision of Director, Def.'s Ex. H at 5.) On remand, the Board has the ability to determine whether further evidence is "helpful," and whether it would be "productive" to hold an additional hearing. 2 Charles H. Koch, Jr., Administrative Law and Practice § 8.31[1](c) (2d ed. 1997). The Board chose to rehear testimony from Plaintiff and Defendant because the individuals on the Board could not recall the specific facts of the dispute. This decision to rehear testimony from both sides is within the purview of the remand. Defendant's argument that the Board violated § 42-35-11 is likewise without merit. Section 42-35-11 applies "[w]henever in a contested a case a majority of the officials of the agency who are to render the final decision have not heard the case or read the record. . . ." Section 42-35-11. Defendant contends that the Board had not heard the case because it had not listened to the entire transcript of the prior hearing. As stated above, the entire prior hearing was not part of the evidence for the rehearing on remand; therefore, § 42-35-11 does not apply, and the Board's decision was not made upon unlawful procedure.
 Review of the Board's Written Decisions for Findings of Fact and Conclusions of Law
Defendant asserts that the Board's decision of January 3, 2003 violated § 42-35-12 because the Board provided neither findings of fact nor conclusions of law in support of its decision to refund the full purchase price to Plaintiff. The Board, in response, contends that Defendant's argument is "intended to mislead." (Bd. Mem. at 5.)
This Court has reviewed both of the Board's decisions. Both parties agree that the Hearing Officer was correct in remanding the Board's decision following the July hearing. The Board's written decision, dated August 2, 2002, was not reflective of their decision on the record, and was not supported by sufficient facts on the record. Section 42-35-12 of the Administrative Procedures Act requires final orders to be in writing or stated in the record. Section 42-35-12. Further, § 42-35-12 states, in pertinent part:
 "Any final order shall include findings of fact and conclusions of law, separately stated. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings."
The written decision following the first hearing stated that the Board, after taking testimony and reviewing documents, concluded that Defendant must repair the lower intake gasket of Plaintiff's vehicle. The Board did not mention which documents they used in making their decision; the Board also did not note that Defendant had been unable to fix the lower intake gasket because Plaintiff did not allow them to service the vehicle, something they had stated in their recorded decision. Additionally, the written decision made statements contradictory to the evidence Defendant and Plaintiff presented at the hearing. Furthermore, the Board "found [Defendant] in violation of the Rhode Island General Laws31-5-11 (1), (3), and (10)," but did not give any factual findings to support that conclusion of law. (Decision of Board, Def.'s Ex. G.) Without sufficient findings of fact to support the decision of the Board, in addition to the inaccurate statements of fact and findings, the Hearing Officer's remanding the decision to the Board for a "re-hearing and/or clarification of its decision," was not in violation of statutory provisions or arbitrary. (Decision of Director, Def.'s Ex. H at 5.)
The Hearing Officer's affirming the decision of the Board after the December hearing was arbitrary and in violation of statutory provisions, however. The Board's written decision following the second hearing, dated January 3, 2003, fails to clearly state, pursuant to § 42-35-12, the statutory authority or reason for voiding the sale of Plaintiff's vehicle and requiring Defendant to refund the full purchase price to Plaintiff. The Board's decision on record indicated that the sale was void because the inspection sticker "was over 90 days old." (Dec. Tr. at 25.) In its written decision, the Board stated a remedy in one paragraph, that it was voiding the sale of the vehicle. No statutory authority or finding of fact is connected to that paragraph. In the next paragraph, the Board recorded its finding, that the "vehicle was sold without a valid inspection sticker," then the Board noted the statute requiring such a sticker, G.L. 1956 §31-38-1(b). (Def.'s Ex. I.)
Section 31-38-1(b) states that
 "No dealer of used vehicles, as defined by § 31-1-19(b), shall sell at retail a used motor vehicle unless a new inspection of the vehicle conforming to the standards set pursuant to this chapter and chapter 47.1 of this title has been conducted and the vehicle has a new certificate of inspection affixed to the windshield at the time of sale. . . ."
In this paragraph, the Board also provided its remedy for violating that statute. The remedy for violating § 31-38-1 falls under § 31-38-11, which reads:
 "Any person violating any of the provisions of §§ 31-38-1 — 31-38-10 of this chapter, or of the rules and regulations established by the director of the department of administration as provided in this chapter, shall upon conviction be punished by a fine of not more than five hundred dollars ($500.00) or by imprisonment of not more than thirty (30) days or by both a fine and imprisonment. The director of the department of administration shall revoke the permit of any inspection station who shall be convicted more than once for violations."
The Hearing Officer, in upholding the decision of the Board, stated the law in her findings of fact supporting the finding of a $100 fine, but failed to acknowledge the law permitting a full refund of purchase price to Plaintiff. Additionally, the Hearing Officer stated in her findings of fact that the Board imposed the $100 fine for the Defendant's violation of "Section 1.16 of the Rules and Regulations Regarding Dealers, Manufacturers, and Rental Licenses." (Def.'s Ex. J at 2.) Such a section is not included in the Rules and Regulations, and no such section reference was ever made in the Board's decision, written or recorded.
Agencies must clearly articulate the grounds of their decisions so appellate courts are able to perform meaningful judicial review. Sciacca v. Caruso, 769 A.2d 578, 585 (R.I. 2001) (citing Irish P'ship v. Rommel, 518 A.2d 356, 358-59 (R.I. 1986)); see also Rizek v. Secs. Exch. Comm'n,215 F.3d 157, 161 (1st Cir. 2000) (citing SEC v. Chenery Corp,318 U.S. 80, 94 (1943)). In making its decision, an agency must look at the relevant data and express a "satisfactory explanation for its action including a `rational connection between the facts found and the choice made.'" Motor Vehicle Mfrs. Ass'n v. State FarmMut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (quoting BurlingtonTruck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962)). The reviewing "court will not search the record for supporting evidence or decide for itself what is proper in the circumstances." Irish P'ship, 518 A.2d at 359. To correct this deficiency, this Court can remand the case to the agency in order to give the parties sufficient judicial review. See Lemoine,113 R.I. at 290, 320 A.2d at 614. Accordingly, this Court remands the decision to the Board.
Moreover, Defendant contends that refunding the purchase price to Plaintiff would result in unjust enrichment and an inequitable result. The Board did not respond to this argument. Defendant argues that it would be unjust to order Defendant to refund Plaintiff the entire purchase price due to Plaintiff's negligence in driving the car into the ground. It is uncontested that Plaintiff continued to drive the vehicle, despite numerous warnings from her own mechanic, Defendant's mechanic, and the first Board. Plaintiff initiated her complaint against Defendant due to their unwillingness to replace her head gasket, a problem that only she contended existed. No evidence exists in the record to support her statement that her vehicle had a head gasket problem. After filing her complaint against Defendant, Plaintiff continued to drive the vehicle for over 3000 miles, despite numerous letters and phone calls of warning, until it overheated. In its written decision, the Board made no acknowledgement or reference to Plaintiff's complete disregard for all warnings. Defendant argues that to order a refund to Plaintiff for a vehicle that she destroyed by her negligence would be unconscionable.
A trial court may be guided by principles of equity when reviewing agency decisions. DeFalco, 447 A.2d at 476. However, sitting as an appellate body, this Court cannot overturn a decision of the Board for equitable reasons if the decision is supported by competent evidence in the certified record.Nickerson v. Reitsma, 853 A.2d 1202, 1206 (R.I. 2004). InNickerson, the Supreme Court of Rhode Island reversed a Superior Court decision because the trial justice had vacated the chosen penalty of an agency for equitable reasons even after finding that the administrative agency did not make its finding in error. Id. The case at bar, however, is both different and distinguishable from Nickerson. While the fact that Defendant sold the vehicle without a valid inspection sticker need not be condoned, requiring a full refund under the factual circumstances of this case, without even referring to those circumstances, would violate the basic principles of equity. See DeFalco,
557 A.2d 476. Therefore, this Court remands the decision of the Hearing Officer to the Board for further consideration.
On remand, the Board shall allow both parties to present evidence as to the proper sanction, considering the negligence of Plaintiff in such a sanction, and especially the present state of the vehicle. The Board must also consider Plaintiff's negligence in continuing to use the vehicle without taking it in for service, after numerous warnings from her own personal mechanic, Defendant's mechanic, and the Board in the first hearing. In doing so, the Board shall look at evidence presented by both parties at both hearings before the Board. In its decision, the Board must state its findings of fact and conclusions of law, separately, pursuant to § 42-35-12. Specifically, the Board must pronounce each conclusion, the facts supporting each conclusion, the statutory authority for each conclusion, the remedy ordered for each conclusion, and the statutory authority for each remedy.
 CONCLUSION
After a review of the entire record, this Court finds that the Board's decision that Defendant sold the vehicle without a valid inspection sticker was supported by sufficient evidence. That finding is affirmed. However, this Court remands this matter to the agency for clarification of their decision of January 3, 2003. This Court finds that the Board's decision, which was arbitrary, capricious, and an abuse of discretion, substantially prejudiced the Defendant. This court will not substitute its judgment for that of the Board by imposing its own sanction; however, the full refund is vacated at this time and the matter is remanded to the Board for further determination of an appropriate sanction consistent with this opinion. This Court will retain jurisdiction. The Board must hold the hearing and render its decision to this Court within sixty days.
[1] The Rules and Regulations Regarding Dealers, Manufacturers and Rental Licenses cited herein were repealed on July 22, 2004. A new set of rules and regulations, titled "Dealers, Manufacturers and Rental Licenses," were implemented on August 12, 2004. All references in this opinion to the Rules and Regulations are to the repealed version because it was the law that existed at the time of the alleged violation.
[2] The Rules and Regulations promulgated on August 12, 2004 do contain such a provision. In Part VI (Requirements for Dealers), section S ("Inspection of Vehicles"), the new Rules and Regulations state:
 "No dealer of used vehicles, as defined by R.I.G.L. § 31-1-19 (b), shall sell at retail a used motor vehicle unless a new inspection of the vehicle conforming to the standards set pursuant to Chapters 31-38 and 31-47.1 has been conducted and the vehicle has a new certificate of inspection affixed to the windshield at the time of sale. A new inspection consists of an inspection conducted at a point no more than ninety (90) calendar days prior to the date of sale of a vehicle, or an inspection conducted no more than 500 vehicle odometer miles prior to the date of sale, whichever shall occur first."