[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is an appeal from a December 3, 2010 decision by the Rhode Island Department of Human Services ("DHS"), denying Mary Paquette ("Appellant") medical assistance ("MA") benefits on the grounds of disability under G.L. 1956 § 40-8-1, et seq. Appellant filed her timely appeal on December 23, 2010, seeking a reversal of the DHS decision. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 I Facts and Travel
In May 2010, Appellant applied for MA, claiming disability based on "chronic knee and back pain, Asthma, Hypertension, and Depression and Anxiety." (Administrative Hearing Decision at 2.) Appellant is a forty-two year old female who graduated from high school and worked as an office manager in manufacturing. (Administrative Decision Hearing at 4; Tr. at 4.) Appellant had worked in that industry for some twenty years and had functioned most recently as an office manager, which required her to lift ten to fifty pounds, and to sit and stand for most of the day with some bending and walking. (AP-70, May 12, 2010, Ex. 8 at 4; Administrative *Page 2 
Hearing Decision at 5; Tr. at 4-6.) She stopped working as an office manager in May 2009 due to her illness. (AP-70, May 12, 2010, Ex. 8 at 4.)
As part of her application for MA benefits, Appellant submitted an AP-70 form: Information for Determination of Disability. Appellant acknowledged that she is able to do housework, including cooking and laundry, and that she only needs help with the housework "sometimes." (AP-70, May 12, 2010, Ex. 8 at 4.) Appellant provided that she does not need help getting around, although she limps "a great deal." (AP-70, May 12, 2010, Ex. 8 at 4.)
Appellant also submitted a MA-63 physician's examination report prepared by Dr. Gregory Allen ("Dr. Allen"), a treating physician. The MA-63 was completed on May 12, 2010 and diagnosed Appellant with back pain and asthma. (MA-63, May 12, 2010, Ex. 7 at 2-3; Administrative Hearing Decision at 2.) However, Dr. Allen indicated that in order to determine Appellant's functional limitations during an eight-hour period, Appellant would require a formal physical therapy or orthopedic evaluation. Dr. Allen also found that Appellant's mental activities were only "slightly limited." (MA-63, May 12, 2010, Ex. 7 at 2-3; Administrative Hearing Decision at 4.) Finally, Dr. Allen noted that any additional impairments were "unknown" and require a formal psychiatric evaluation. (MA-63, May 12, 2010, Ex. 7 at 4.)
Dr. Allen's notes were also submitted with the MA benefit application, including notes from Appellant's visits on July 2009, August 2009, June 2010, and October 4, 2010. (Request to Reverse Mart Denial and Medical Records, November 18, 2010, Ex. 11 at 28-36.) During these visits, Dr. Allen's notes report that Appellant had problems with asthma, insomnia, left knee and low back pain, allergies, and gastroesophageal reflux disease ("GERD"), but that each problem was controllable with medication. The notes from June 2010 reflect that Appellant complained of blurry vision, but that Appellant was to have eye surgery with Dr. Paul Koch ("Dr. Koch"). *Page 3 
(Release Form and Medical Plan, October 20, 2010, Ex. 5.) In the notes dated October 4, 2010, Appellant complained of "excruciating left knee pain," although Dr. Allen reported that there was "minimal or any swelling" and "an MRI back several months ago . . . showed completely normal." (Request to Reverse Mart Denial and Medical Records, November 18, 2010, Ex. 11 at 35.) Appellant also complained that she was unable to sleep due to the increased knee and back pain, for which Dr. Allen prescribed Vicoden, although it was not to be taken on a regular basis. Id. at 36.
Finally, Appellant submitted a MA-63 completed in September 2010 by Dr. Lisa Trasatti ("Dr. Trasatti"), a treating counselor at Free Care Gateway Healthcare. Appellant started counseling with Dr. Trasatti in February of 2010 for bipolar disorder and Post Traumatic Stress Disorder ("PTSD") caused by her mother's murder and her children being taken away. Dr. Trasatti reported symptoms of mood swings, depression, hopelessness, sleeplessness, somatic pain, racing thoughts, suicidal ideation, impulsiveness, mania, and trauma from childhood. (Request to Reverse Mart Denial and Medical Records, November 18, 2010, Ex. 11 at 7.) Dr. Trasatti indicated that Appellant's mental activities were slightly limited, with the exception of three activities where Appellant was "markedly limited," including the ability to maintain attention and concentration, interact with co-workers and supervisors, and work at a consistent pace without extraordinary supervision. Id. at 8. As for physical symptoms, Dr. Trasatti noted that Appellant could not walk or stand for more than two hours, could only sit for four out of eight hours, and could only reach and bend occasionally. Id. at 8. Further, Dr. Trasatti reported Appellant could lift up to fifty pounds "occasionally/not at all." Id. at 8. Finally, Dr. Trasatti noted that any additional impairments were mostly caused by physical issues and that it would be hard for Appellant to maintain employment without medicine for her bipolar disorder. Id. at 9. *Page 4 
The Medical Assistance Review Team (MART)[1] reviewed the MA-63 forms (physician's examination report), an AP-70 form (information for the determination of disability), records from Imaging Institute, a letter from Gateway Healthcare Inc., and records from Koch Eye Associates. (Administrative Hearing Decision at 2-3.) After evaluating the evidence, the MART determined that Appellant did not qualify as disabled and denied Appellant's application for MA benefits on July 27, 2010. Appellant timely requested and received a hearing to challenge the MART's determination that she was not disabled and was ineligible for MA benefits. Id. at 1-2.
A hearing was held on November 24, 2010. At the hearing, a representative of DHS and Appellant both testified. (Tr. at 1-2.) The DHS representative testified that pursuant to the Department of Human Services Policy manual, the MART must establish an applicant's eligibility in order to grant MA benefits. (Tr. at 2.) The DHS representative explained that in order for an applicant to qualify for MA, he or she must be over the age of sixty-five, blind, or disabled.Id. The MART, finding that Appellant was neither blind nor over the age of sixty-five, used a five-step sequential evaluation to determine if Appellant was disabled. Id. According to the DHS representative, in order for an illness or an injury to qualify as a disability, "[i]t must have lasted or can be expected to last for a continuous period for not less than twelve months and must be severe enough to render you incapable of any type of work not necessarily your past work." (Administrative Hearing Decision at 2; Tr. at 2.)
The DHS representative testified that the MART reviewed the medical records, including: "the MA-63," "the AP-70," "a med list," "some diagnostic reports," "a letter of support from a Gateway Practitioner," "Koch eye records, and records from Dr. Allen, which *Page 5 
was received post decision and were reviewed in preparation for this hearing," and "original medical records." (Administrative Hearing Decision at 3; Tr. at 3-4.) The medical records and MA-63 provided a diagnosis of "asthma, hypertension, cataracts, depression and a history of GERD." (Administrative Hearing Decision at 3; Tr. at 3.) However, the records indicate Appellant's vision is correctable; she uses Motrin, Vicodin, and Flexeril to control her pain; her blood pressure is under control with medication; her allergies are controlled with Flonase and medication; and she has no current issue with GERD. (Administrative Hearing Decision at 3-4; Tr. at 3-4.) As a result of reviewing the medical records, the MART concluded that "the medical records do not support evidence of a severe impairment," and that Appellant was not disabled under step two of the disability analysis. (Administrative Hearing Decision at 4; Tr. at 4.)
Appellant also testified at the hearing. Specifically, Appellant testified that she stopped going to the doctor because she does not have insurance. (Tr. at 6-7.) Appellant further testified that she suffers from depression and has trouble sleeping. (Tr. at 7-9.) She also testified to pain caused by a Baker's cyst behind her left knee, which she takes Motrin, Flexeril, or Vicodin to ease the pain; hypertension and acid reflux, although her medication helps control these problems; and cataracts. (Administrative Hearing Decision at 6, 8-11; Tr. at 9-12.)
After reviewing Appellant's medical records and hearing the DHS representative's and Appellant's testimony, the DHS Hearing Officer Geralyn B. Standord ("Hearing Officer") made the following relevant findings of fact:
 "[1.] The appellant is not engaging in substantial gainful activity.
 [2.] At the time of this decision, the appellant did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in the Social Security listings.
 [3.] The appellant was born on 07/23/1968 and is 42 years old, which is defined as a younger individual. (20 CFR 416.963). *Page 6 
 [4.] The appellant has a high school education, a certificate from The Sawyer School and is able to communicate in English. (20 CFR 416.964).
 [5.] Appellant is not disabled as defined in the Social Security Act.
 [6.] The appellant is not disabled for the purposes of the Medical Assistance Program." (Administrative Hearing Decision at 3-4.)
Based on these findings, the Hearing Officer issued a written decision on December 3, 2010, sustaining the MART's determination that Appellant was not disabled and thus ineligible for MA benefits. On December 23, 2010, Appellant timely appealed that decision to this Court. (Administrative Hearing Decision at 2; Plaintiff's Complaint at 1.) Appellant seeks to reverse and remand the DHS decision.
 II Standard of Review
Rhode Island General Laws § 42-35-15 (g) governs the Superior Court's scope of review for an appeal of a final agency decision. Sec. 42-35-15 (g). The statute provides, in relevant part:
 "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Sec. 42-35-15. *Page 7 
It is a "well-recognized doctrine of administrative law that deference will be accorded to an administrative agency when it interprets a statute whose administration and enforcement have been entrusted to the agency . . . even when the agency's interpretation is not the only permissible interpretation that would be applied." Auto Body Ass'n ofRhode Island v. State Dept. of Business Regulations,996 A.2d 91, 97 (R.I. 2010) (quoting Pawtucket PowerAssocs. Ltd. P'ship v. City of Pawtucket,622 A.2d 452, 456-57 (R.I. 1993)). Sitting as an appellate court with a limited scope of review, the Superior Court justice may not substitute his or her judgment for that of the agency with respect to the credibility of the witnesses or the weight of the evidence as to questions of fact. Interstate Navigation Co. v. Division of Pub.Utils. Carriers of R.I.,824 A.2d 1282, 1286 (R.I. 2003) (citations omitted). This directive applies even if the court may have been inclined to arrive at different conclusions and inferences upon review of the evidence and the record.Johnston Ambulatory Surgical Associates, LTD. v. Nolan,755 A.2d 799, 805 (R.I. 2000) (quoting Rhode IslandPub. Telecomm. Auth. v. Rhode Island State Labor Relations Bd.,650 A.2d 479, 485 (R.I. 1994)); Barrington Sch. Comm. v. Rhode IslandState Labor Relations Bd., 608 A.2d 1126, 1138 (R.I. 1992).
Additionally, the Court must uphold the agency's decision if legally competent evidence exists in the record. Town of Burrillville v.Rhode Island State Labor Relations Bd.,921 A.2d 113, 118 (citations omitted). Legally competent evidence is "?the presence of some or any evidence supporting the agency's findings.'" Auto Body Ass'n. of R.I., 996 A.2d at 95 (quotingEnvironmental Scientific Corp. v. Durfee,621 A.2d 200, 208 (R.I. 1993). Thus, the court may not substitute its judgment on the questions of fact for that of the agency, "even in a case in which the court ?might be inclined to view the evidence differently and draw inferences different from those of the agency.'"Johnston Ambulatory, 755 A.2d at 805 (quoting Rhode IslandPub. *Page 8 Telecomm. Auth. v. Rhode Island State Labor Relations Bd.,650 A.2d at 485). Although the Court affords an agency deference to its factual findings, questions of law are reviewed de novo.Iselin v. Retirement Bd. of Employees' Retirement Sys. of R.I.,943 A.2d 1045, 1049 (R.I. 2008) (citation omitted).
 III The Department of Human Services
The Department of Human Services exists as an agency within the Executive Branch. Sec. 42-12-1, et seq. Pursuant to § 42-12-4 of the Rhode Island General Laws, DHS manages federally and state funded public assistance programs, one of which provides MA to persons who qualify for the benefits under § 40-8-3. Sec. 42-12-4 (providing that "[t]he department of human services shall have supervision and management of . . . [a]ll forms of public assistance under the control of the state"); sec. 40-8-3 (outlining eligibility requirements for medical care benefits); see
sec. 40-8-1 (declaration of policy). In order to receive federal funding for the MA program, DHS must "establish income and resource rules, regulations, and limits in accordance with title XIX of the federal Social Security Act, 42 U.S.C. § 1396, et seq., as applicable to the medically needy only applicants and recipients." Sec. 40-8-3; 42 U.S.C. § 1396 (mandating that "[t]he sums made available under this section shall be used for making payments to States which have submitted, and had approved by the Secretary, State plans for medical assistance"); see sec. 40-8-13 (empowering DHS Director to create rules and regulations in conformity with 42 U.S.C. § 1396, et seq.). Thus, when defining "disabled" and creating eligibility requirements, the DHS must promulgate rules that adhere to the federal definitions and guidelines as set forth in federal statutes and regulations. 42 U.S.C. § 1396, etseq.; 20 C.F.R. § 416.901-998. *Page 9 
Section 0352.15 of the DHS Manual outlines the policy relating to eligibility based on disability for MA benefits. See Rhode IslandDepartment of Human ServicesManual § 0352.15 (hereinafter DHS Manual). Mirroring federal provisions, the DHS policy provides, in relevant part:
 "To be eligible for Medical Assistance because of permanent or total disability, a person must have a permanent physical or mental impairment, disease or loss, other than blindness, that substantially precludes engagement in useful occupations or appropriate activities (for children) within his/her competence.
 A physical or mental impairment is an impairment which results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable, clinical and laboratory diagnostic techniques." DHS Manual § 0352.15; see 42 U.S.C. § 1382c (a)(3) (2003).
For an individual to qualify as "disabled," the person must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted, or can be expected to last for a continuous period of not less than twelve (12) months. . . ." DHSManual § 0352.15; see 42 U.S.C. § 1382c (a)(3). In addition, § 0352.15.05 provides that "[w]hether or not an impairment . . . constitutes a disability, as defined in Section 0352.15, is determined from all the facts of that case," with primary consideration given to the severity of the impairment, and further consideration given to the individual's age, education, and work experience. DHSManual §§ 0352.15; 0352.15.05.
To determine whether an applicant qualifies as "disabled" for the purposes of MA eligibility, a Hearing Officer engages in a five-step sequential inquiry, which follows the five-step federal process enunciated in 20 C.F.R. § 416.920.Compare 20 C.F.R. § 416.920 with DHSManual §§ 0352.15; 0352.15.05; 0352.15.15; 0352.15.20. The Hearing Officer asks: *Page 10 
 1. Is the claimant engaged in substantial activity?
 2. If not, is the impairment severe?
 3. If severe, does it meet or equal an impairment listed in the Supplemental Security Income (SSI) regulations?
 4. If it does not meet or equal SSI regulations, does the impairment prevent the claimant from doing past relevant work?
 5. Considering age, education, work experience and residual functional capacity, does the impairment(s) prevent the claimant from doing other work in the national economy?
See 20 C.F.R. § 416.920; DHSManual §§ 0352.15; 0352.15.05; 0352.15.15; 0352.15.20; seealso Bowen v. Yuckert 482 U.S. 137, 140-42 (1987) (outlining five-step process enunciated in 20 C.F.R. § 416.920). Because of the sequential nature of this five-pronged analysis, a negative determination at any one of the steps (except for step three) forecloses a finding of "disabled." McDaniel v. Bowen,800 F.2d 1026, 1030 (11th Cir. 1986); see Seavey v. Barnhart276 F.3d 1, 5 (1st Cir. 2001) (observing that "[a]ll five steps are not applied to every applicant, as the determination may be concluded at any step along the process").
Finally, although the claimant bears the burden of proof as to the first four steps, the burden shifts to DHS at step five to demonstrate that a claimant can perform work in the national economy other than his or her past relevant work. Pope v. Shalala,998 F.2d 473, 477 (7th Cir. 1993) (noting that at step five, "the burden shifts to the Secretary to show that the claimant can perform some other job"). In determining whether an applicant can perform other work, the Hearing Officer may rely on either the Medical-Vocational Guidelines (the Grid) or testimony of a vocational expert (VE).[2]See Tackett v. Apfel 180 F.3d 1094, 1100-01 (9th Cir. 1999) (explaining that "[t]here are two ways for the Commissioner to meet the burden of showing that *Page 11 
there is other work in `significant numbers' in the national economy that claimant can perform: (a) by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational Guidelines").
In the present case, the Hearing Officer effectuated the aforementioned five-step analysis in her decision of December 3, 2010; she denied Appellant benefits at step five. (Administrative Hearing Decision at 10-11.) The Hearing Officer found that while Appellant has not engaged in substantial gainful activity since May 2009, id at 7, and suffers from severe impairments[3] — including depression, pain, and cataracts,id at 8 — the medical findings did not equal any listed impairment. Id at 8-9. After determining that Appellant could not return to her past work as an office manager, which requires light-skilled work, id at 9, the Hearing Officer concluded that Appellant had the residual functional capacity to perform light work. Id at 9-11.
 IV Analysis
Appellant contends that the DHS decision denying her benefits lacks adequate findings of fact and conclusions of law; was based on error of law; was arbitrary and capricious; and was not supported by substantial evidence. Specifically, Appellant asserts the following: (1) the Hearing Officer failed to identify specific evidence to support her conclusions; (2) the Hearing Officer failed to give proper weight to the opinion of Appellant's treating physician; (3) the Hearing *Page 12 
Officer ignored all mental symptoms of record in assessing Appellant's pain and symptoms; (4) the Hearing Officer failed to discuss Listing 12.04; (5) the Hearing Officer improperly interpreted medical records beyond her expertise; and (6) the Hearing Officer failed to properly assess pain and symptoms as federal law requires.
Alternatively, the DHS contends that the findings are supported by competent, reliable, and substantial evidence in the record. The DHS asserts the Hearing Officer applied the correct legal standards to the evidence in the case and exercised the appropriate legal authority in arriving at a decision based on her interpretation of all of the facts and evidence presented in this matter. Therefore, the DHS requests that this Court affirm its decision.
 A Application of Findings
Appellant argues the Hearing Officer did not comply with § 42-35-12, but simply recounted medical evidence in detail without making findings on it, reprinted the regulations and legal standards without applying them, and proceeded immediately to unsubstantiated conclusions. DHS responds that the Hearing Officer correctly analyzed and applied the facts in this case and discussed the evidence in sufficient detail.
Final agency decisions must include findings of fact and conclusions of law. Findings of fact "shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings." Sec. 42-35-12. "[T]he rationality of an agency's decision must encompass its fact findings, its interpretations of the pertinent law, and its application of the law to the facts as found." Sakonnet Rogers,Inc. v. Coastal Resources Mgmt. Council,536 A.2d 893, 896 (R.I. 1988) (quoting Arrow TransportationCo. v. United States, 300 F. Supp. 813, 817 (D.R.I. 1969)). For example, in East Greenwich Yacht Club, our Supreme Court ruled that the Coastal *Page 13 
Resources Management Council neglected to include any basic findings in its decision and this absence of required findings made judicial review impossible. East Greenwich Yacht Club v. Coastal Resources ManagementCouncil, 188 R.I. 559, 569, 376 A.2d 682, 687 (1997).
Appellant cites to Flynn, wherein the court found a hearing officer provided a general recounting of the medical record and recitation of DHS regulations, but failed to advise as to logical connections between the record and controlling criteria. Flynn v.R.I. Dept. of Human Services, No. PC-1993-3077, 1995 WL 941389, at *2 (Super. Ct. Jan. 26, 1995). TheFlynn case, which is a Superior Court case, is both distinguishable and not binding. In Flynn, the hearing officer's conclusions simply stated that the Officer "review[ed] the available evidence" and "medical evidence," without explaining which specific evidence was relied on by the Hearing Officer. Flynn at *2.
Here, the Hearing Officer made specific findings of fact and specified the precise manner in which Appellant failed to meet the standards under the five-step disability analysis. Specifically, the Hearing Officer recounted the medical evidence in detail under the section titled "Discussion of the Medical Evidence Record." (Administrative Hearing Decision at 4-7.) In this section, the Hearing Officer summarized "two MA-63 reports and notes from the Gateway Healthcare, Dr. Allen, Koch Eye Associates and The Imagining Institute," as well as the Appellant's testimony. (Administrative Hearing Decision at 4.)
The Hearing Officer then provided the standard to evaluate the medical opinion, specifically, that the "medical opinion evidence is evaluated in accordance with the factors set forth at 20 CFR 416.927." (Administrative Hearing Decision at 4-7.) In considering the standard, the Hearing Officer explained that "pain can be a significant non-exertional impairment," but "there must also be other medical evidence or laboratory findings showing the *Page 14 
existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged." (Administrative Hearing Decision at 6.)
Examining the underlying facts provided by the medical record and Appellant's testimony, the Hearing Officer then applied the law. The Hearing Officer stressed that while Appellant testified to pain in her left knee and lower back and had migraine headaches, there was no medical evidence or laboratory findings to support Appellant's testimony. (Administrative Hearing Decision at 9-11; Tr. at 3-4, 8-11.) Alternatively, Flynn, on which Appellant relies, the court explained that a hearing officer must provide "what logical connections, if any, were made . . . between the facts in the record and the controlling criteria respecting eligibility." Flynn at *2. Accordingly, here the Hearing Officer made specific findings of fact, interpreted the law, and applied the law to the facts as found.
Secondly, Appellant argues that the Hearing Officer's finding that some of Appellant's impairments — including osteoarthritis of knees, GERD, anxiety, chronic insomnia, and bipolar disorder — were not considered substantial impairments was unsupported by substantial evidence and arbitrary and capricious. The DHS argues that the Hearing Officer correctly weighed the evidence in reaching her conclusions.
Step two of the sequential disability evaluation is "a deminimis standard" in which the agency determines whether the medical evidence demonstrates that the claimant has any limitations in his or her ability to perform basic work-related activity. Lisi v.Apfel, 111 F. Supp. 2d 103, 110 (D.R.I. 2000) (citingMcDonald v. Secretary of Health and Human Servs.,795 F.2d 1118, 1124 (1st Cir. 1986)). Initially, it should be noted that "[a]s with other elements involved in establishing a prima facie case of disability, the claimant has the burden of establishing the presence of a severe impairment." 3 Social Security Law andPractice § 41:3 (2003) (citing *Page 15 Bowen, 482 U.S. 137; Caviness v. Massanari,250 F.3d 603 (8th Cir. 2001)). To satisfy this requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The hearing officer considers all symptoms, including pain, and the extent to which signs and laboratory findings confirm these symptoms.Zeytuntsyan v. Sullivan, 1992 U.S. App. LEXIS 18421, *6 (9th Cir. 1992). A three part "pain standard" applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. Holt v. Sullivan,921 F.2d 1221, 1223 (11th Cir. 1991). "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medial evidence that confirms the severity of the alleged pain arising from the condition or (3) that the objectively determined medical condition is of such a severity that is can be reasonably expected to give rise to the alleged pain."Id.; 20 C.F.R. § 416.929(b).
In the instant matter, the Hearing Officer articulated and applied the appropriate legal standard at step two of the sequential evaluation process. In the written decision, the Hearing Officer acknowledged the low threshold for finding a "severe impairment" at that stage of the inquiry, as provided under 20 C.F.R. 416.920(c) and20 C.F.R. 416.909. (Administrative Hearing Decision at 8.) Guided by the severe impairment threshold, the Hearing Officer then reviewed the medical record, commented on Appellant's testimony, and rendered his findings that the evidence was insufficient to determine that Appellant suffered from a severe impairment. (Tr. at 6-12; MA-63, May 12, 2010, Ex. 7 at 2-3.) Specifically, the Hearing Officer found that Appellant's impairments were not medically verified. (MA-63, May 12, 2010, Ex. 7 at 2-3.) In addition, the record evidences Appellant's GERD, anxiety, insomnia, and bipolar disorder were *Page 16 
not considered severe because they are controlled with medication.See Tr. at 8-11; see also Brooks v. Dept. of HumanServices, 2004 WL 1067926, *4 (R.I. Super.) (quoting Hutton v.Apfel, 175 F.3d 651, 655 (8th Cir. 1999) ("Impairments that are controllable or amenable to treatment do not support a finding of total disability.")). Finally, the Hearing Officer noted that the only evidence regarding Appellant's ability to perform her past relevant work was her own testimony. (Tr. at 2-6; MA-63, May 12, 2010, Ex. 7 at 2-3; Request to Reverse Mart Denial and Medical Records, November 18, 2010, Ex. 11 at 8). Accordingly, the record demonstrates there was sufficient competent evidence in the record for the Hearing Officer to conclude that Appellant did not suffer from a severe impairment with respect to her GERD, anxiety, insomnia, and bipolar disorder.
Lastly, Appellant alleges the Hearing Officer did not identify specific evidence to support the conclusions but merely referred to "the medical records" and the "testimony" at steps three through five. Specifically, relying on Kershaw v. R.I. Dept. of HumanServices, Appellant argues the findings at step three must refer to the record rather than unsubstantiated conclusions that the impairments do not meet a listing. No. Civ.A.-2005-0632, 2005 WL 3369661 (Super. Ct. Dec. 6, 2005). In response, Appellee argues the Hearing Officer did examine the criteria in the Listings and identified specific evidence to support that the medical records did not meet the requirements of the listings.
The Hearing Officer's evaluation in this case is different from that of Kershaw, on which Appellant relies. In Kershaw, the hearing officer's analysis simply stated that "the record in this matter does not contain evidence to establish that any of the appellant's medical impairments are at a listing level severity." The hearing officer in Kershaw also failed to indicate whether she *Page 17 
took into account the most recent blood and urinary tests submitted by the Plaintiff and why the Plaintiff did not meet listings.Kershaw at *17-18.
Unlike Kershaw, again a Superior Court case that is not binding on this Court, the Hearing Officer here described the listing requirements and then discussed how the medical records did not contain the criteria of a listing. (Administrative Hearing Decision at 8). The record demonstrates that the medical records indicate Appellant suffers from persistent chronic pain of the lower back and left knee, but that the clinical test results do not indicate a condition that rises to the level of the listing. (Tr. at 3-4, 8-11). Specifically, the Hearing Officer noted that "[t]here is no sublaxation of the knee, bony or fibrous ankylosis, and joint space narrowing or bone destruction." (Administrative Hearing Decision at 8). The Hearing Officer also noted that Appellant is not on any medication for her depression, "has not been hospitalized," that there is "[n]o clinical evidence of psych-motor retardation, hallucinations, delusions or paranoid thinking," "no clinical evidence of marked difficulties in concentration or repeated episodes of decompensation." (Administrative Hearing Decision at 8; Tr. at 6, 8; MA-63, May 12, 2010, Ex. 7 at 2-4.) Finally, the record demonstrates that mental status exams were not submitted and a patient's report of symptoms alone is not acceptable evidence. (Tr. at 3-4; MA-63, May 12, 2010, Ex. 7 at 3-4; Request to Reverse Mart Denial and Medical Records, November 18, 2010, Ex. 11 at 16-27.) Accordingly, the Hearing Officer's decision is not arbitrary or capricious, and is not clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. *Page 18 
 B Weight of Physician's Opinion
Appellant argues that the Hearing Officer failed to articulate and apply the controlling weight standard to Dr. Allen with sufficient specificity. Further, Appellant alleges that the Hearing Officer did not "assess the treating therapist's opinion by reference to the relevant factors" or "identify what weight was due or given to Dr. Allen's opinion." The DHS responds that the Hearing Officer properly weighed the medical opinion evidence and non-medical information and did not exceed her authority in evaluating the medical opinions.
To determine if an applicant is disabled, the testing physician is entitled to controlling weight if it is found that the physician's opinion "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 416.927(d)(2). Pursuant to 20 C.F.R. § 404.1502, a treating source is an applicant's "own physician, psychologist, or other acceptable medical source who provides [the applicant], or has provided [him or her], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the applicant]."
Treating physicians' opinions warrant controlling weight given their unique position that results from the continuity of treatment and developed relationships with patients.See 20 C.F.R. § 404.1505 (defining a treating physician as having an "ongoing treatment relationship with [the applicant]"). However, the treating physician's opinion is not always dispositive. 20 CFR § 404.1527(d)(2). If the physician's relationship is based not on treatment, but solely on the claimant's need to obtain a report in support of his or her claim for disability, the physician will not be considered a treating source. 3 Soc. Sec. LP § 37:77. *Page 19 
In addition, the hearing officer may not afford controlling weight to a treating physician's opinion when it is inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When the hearing officer determines that the treating physician's opinion does not deserve controlling weight, he or she may provide "good reasons" for the weight afforded and consider various factors in determining how much weight to give the opinion. 20 C.F.R. § 416.927(d). These factors include:
 "(i) the frequency of examination and the length, nature and extent of the treatment relationship;
 (ii) the evidence in support of the treating physician's opinion;
 (iii) the consistence of the opinion with the record as a whole;
 (iv) whether the opinion is from a specialist; and
 (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion." Halloran, 362 F.3d at 32; see also 20 C.F.R. 416.927(d) (explaining these factors with detail).
In considering these factors, the Hearing Officer is neither required to mention every item of testimony presented nor to explain his or her reasoning regarding the weight afforded to each piece of evidence leading to his or her decision. However, great deference is given to the factual findings and conclusions of the hearing officer.Bunch v. Bd. of Review, 690 A.2d 335, 337 (R.I. 1997). Unless the findings and conclusions are "totally devoid of competent evidentiary support in the record," this Court will not disturb them. Id.
The Hearing Officer's decision in the instant case reveals that the Hearing Officer acknowledged and reviewed Dr. Allen's report and Dr. Trasatti's report. The report by Dr. Allen showed Appellant suffered from knee pain, back pain, and asthma — although he could not determine Appellant's physical limitations without a formal physical therapy or orthopedic evaluation — and that Appellant's mental limitations were slight. (MA-63, May 12, 2010, Ex. 7 at 2-4). Dr. Trasatti's report indicated that Appellant appeared to be in physical pain but other *Page 20 
physical limitations were "per [Appellant's] report," and that Appellant suffered from Major Depressive Disorder. (Request to Reverse Mart Denial and Medical Records, November 18, 2010, Ex. 11 at 8). The Hearing Officer relied on this evidence presented to reach her conclusion. Specifically, the Hearing Officer found:
 "[T]he mental status reported by the appellant's treating physician and her clinician were very different. The appellant's doctor found her to have slight mental limitations and the clinician indicated that she had some severe limitations. The appellant's treating physician's opinion would be given more weight as her treating source and an MD. Though the clinician's notes and opinions were taken into consideration she is not an acceptable medical source. There was no evidence of psychiatric evaluation in the record. All of the clinician notes indicate self reported symptoms by the appellant." (Administrative Hearing Decision at 6.)
Contrary to Appellant's assertion, the Hearing Officer did not fail to articulate and apply the applicable legal standards; instead, the Hearing Officer engaged in a comprehensive review of the medical evidence and drew her conclusions from that total evidence. (Administrative Hearing Decision at 4-7.) Only after a comprehensive review of the testimony, evidence, and policy did the Hearing Officer find that the Appellant was not disabled.
Further, this Court's limited role requires deference to the Hearing Officer's factual findings and conclusions and permits only a determination of whether substantial evidence exists to support the Hearing Officer's decision. Center For Behavioral Health v.Barros, 710 A.2d 680, 684 (R.I. 1998); Mine Safety AppliancesCo. v. Berry, 620 A.2d 1255, 1259 (R.I. 1993). Such evidence does exist in the present case, and because the Hearing Officer's findings were not "totally devoid of competent evidentiary support in the record," the Hearing Officer committed no error in her assessments of and reliance upon the opinions of Plaintiff's physicians.Baker v. Dept. of Employment and Training Bd. of Review,637 A.2d 360, 363 (R.I. 1994). *Page 21 
Accordingly, the Hearing Officer relied on competent evidence in the record in support of her conclusion and did not exceed her statutory authority, and therefore, this Court will not disturb his findings.
 C Examination of Appellant's Pain
Appellant contends that the Hearing Officer improperly assessed Appellant's pain. Specifically, Appellant alleges the Hearing Officer limited her consideration to pain and ignored or rejected all mental symptoms of record, including Appellant's used of Vicodin and Dr. Trasatti's observation of Appellant to be physically in pain. Appellant alleges statements about pain may not be rejected solely for lack of confirmation by objective evidence. DHS, however, argues the Hearing Officer correctly considered all medical information and argues the Hearing Officer correctly stressed that there was no clinical evidence to support Appellant's mental symptoms.
A claimant's subjective symptoms of pain are considered in determining whether a claimant is disabled. 20 C.F.R. § 416.929(a) (noting that "we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence, and other evidence"). However, mere "statements about your pain or other symptoms will not alone establish that you are disabled." Id.; see DHSManual § 0352.15 (advising that "[s]tatements of the applicant, including the individual's own description of the impairment (symptoms) are, alone, insufficient to establish the presence of a physical or mental impairment"). In addition,
 "there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including *Page 22 
statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled." 20 C.F.R. § 416.929 (a).
Symptoms, such as pain, "will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 416.929(b). In evaluating the intensity and persistence of pain symptoms, and determining the extent to which those symptoms limit an individual's capacity for work, a hearing officer considers "all of the available evidence, including your medical history, the medical signs and laboratory findings, and statements from you, your treating or examining physician . . . or other persons about how your symptoms affect you." 20 C.F.R. § 416.929 (c). Other factors relevant to an analysis of pain symptoms are
 "(i) Your daily activities;
 (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
 (iii) Precipitating and aggravating factors;
 (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
 (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
 (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
 (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. § 416.929(c)(3).
A hearing officer also "will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your medical history, the medical signs and laboratory findings, and statements by your treating or examining physician . . . about how your symptoms affect you." 20 C.F.R. § 416.929(c)(4). Credibility determinations as to a claimant's subjective assertions of *Page 23 
pain will not be disturbed by a reviewing court unless the determinations are "patently wrong." Pope, 998 F.2d at 487 ("We will not disturb a credibility finding unless it is ?patently wrong in view of the cold record'") (quoting Imani v. Heckler,797 F.2d 508, 512 (7th Cir. 1986)); see Tyra v. Secretary ofHealth Human Servs., 896 F.2d 1024, 1030 (6th Cir. 1990) (noting that with respect to assessments of subjective complaints of pain, "the reviewing court should show deference to the decision of the administrative law judge in assessing credibility").
Here, the Hearing Officer determined that "the appellant is in pain." (Administrative Hearing Decision at 7.) However, with respect to the second inquiry regarding the intensity and persistence of symptoms, the Hearing Officer found that "the medical records do not indicate a medically determinable condition that would be expected to cause pain of that intensity." (Administrative Hearing Decision at 7; Tr. at 8-11.) Although recognizing Appellant's asserted symptoms, the Hearing Officer determined that the medical records did not support a finding of the intensity of pain Appellant testified. (Administrative Hearing Decision at 6-7.)
In support of her conclusion, the Hearing Officer considered the medical record and Appellant's testimony of constant pain in the left knee and occasional lower back pain. (Tr. at 8-11.) Despite Appellant's testimony that she cannot sit for more than twenty minutes or walk for three minutes, (Tr. at 12-13), Dr. Allen's report indicates that he was incapable of determining her physical abilities. (MA-63, May 12, 2010, Ex. 7 at 3.) Without other evidence, namely a psychiatric or psychological evaluation, the Hearing Officer had to rely solely on Appellant's testimony and Dr. Allen and Dr. Trasatti's reports as evidence. According to Dr. Allen and Appellant's testimony, Appellant's condition was controlled through medication. (Tr. at 8-11; MA-63, May 12, 2010, Ex. 7 at 4.) Mindful of the deference afforded to the Hearing Officer as to credibility assessments, this Court finds that substantial evidence supports the Hearing *Page 24 
Officer's decision in this regard. Pope, 998 F.2d at 487. Therefore, the Hearing Officer's conclusion that Appellant's mental impairment did not meet the standard of severity and did not qualify as a disability for MA purposes is not clearly erroneous in view of the reliable, probative, and substantial evidence of record.
 D Social Security Administration Listings
Appellant further argues that she is disabled and meets an SSA listing, specifically, Listing 12.04, but that the Hearing Officer's discussion of step three was completely deficient. The DHS makes a general argument to affirm DHS's decision that Appellant's impairment does not meet a listing and that the Hearing Officer's conclusion is supported by a lack of medical records.
Step three of the disability inquiry examines where the claimant's impairments meet or equals one of the listed impairments set forth in 20 C.F.R. Pt. 404 Subpt. P, App. 1. The Applicant is required to prove that her impairment met or equaled one of the impairments listed in the federal regulations. The impairment listed at 12.04, Affective Disorders, is described as "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elations." 20 C.F.R. Pt. 404, Subpt. P, App. I. Listing of Impairments 12.04.
Here, the Hearing Officer examined listings section 1.00 (Musculoskeletal System) and 12.04 (Affective Disorders). (Administrative Hearing Decision at 8.) The Hearing Officer explained that the medical records do not rise to the level of the listing. In particular, the Hearing Officer noted that Appellant's medical records indicate that Appellant "suffers from *Page 25 
persistent chronic pain of the lower back and left knee; however clinical test results do not indicate a condition that rises to the level the listing." (Administrative Hearing Decision at 8; Tr. at 8-11.) Applying the Listing, the Hearing Officer found "[t]here is no sublaxation of the knee, bony or fibrous ankylosis, and joint space narrowing or bone destruction." (Administrative Hearing Decision at 8.) While the medical records indicate Appellant suffers from depression, she is not on any medication and has not been hospitalized. (Administrative Hearing Decision at 5, 8; Tr. at 8.) Further, there is "[n]o clinical evidence of psych-motor retardation, hallucinations, delusions or paranoid thinking, . . . difficulties in concentration or repeated episodes of decompensation." (Administrative Hearing Decision at 8; Tr. at 6-8.)
Based on the evidence, the Hearing Officer concluded that Appellant's testimony was not sufficient to support a finding of impairment under the listings. In particular, the Hearing Officer stressed the lack of medical records to corroborate Appellant's testimony.[4] SeePope, 998 F.2d at 477 (discussing Appellant's burden to prove impairment under step three). Therefore, the Hearing Officer's conclusion that Appellant's impairment did not qualify as a disability for MA purposes is not in not affected by error of law or clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record.
 E Residual Function Capacity
Appellant argues that the Hearing Officer improperly interpreted the medical record and used her own lay translation of raw medical records into functional terms beyond her expertise. Conversely, the DHS argues the Hearing Officer properly weighed and considered the medical records. *Page 26 
Under step four, the DHS determines the "residual function capacity" ("RFC"). The RFC is what an applicant can still do despite physical, mental, and non-exertional limitations on a regular and continuing basis. 20 C.F.R. § 426.945. The RFC must be based upon all relevant medical and non-medical evidence, such as symptoms, observations of doctors, and daily activities. 20 C.F.R. §§ 416.945(a)-(e).
Here, the Hearing Officer explained that she was giving greater weight to Dr. Allen's medical reports. The Hearing Officer also described that Dr. Allen was Appellant's treating physician and had a longer understanding of her history. While the Hearing Officer did consider Dr. Trasatti's notes and that Appellant missed numerous appointments, the Hearing Officer explained that Dr. Trasatti's notes were not an acceptable medical source and that the reports from Dr. Trasatti were essentially a self-reporting of symptoms by Appellant. See
AP-70, May 12, 2010, Ex. 8 at 3; Request to Reverse Mart Denial and Medical Records, November 18, 2010, Ex. 11 at 16-27; seealso 20 C.F.R. § 416.929(a) (providing that while a hearing officer must consider all symptoms, but only to "the extent to which [the] symptoms can reasonably be accepted as consistent with the objective medical evidence, and other evidence"); 20 C.F.R. § 416.929(b) ("Your symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect your ability to do basic work activities unless medical signs and laboratory findings show that a medically determinable impairment(s) is present.").
As to Appellant's mental impairments, the Hearing Officer explained that there was no evidence to support a finding of disability based on mental impairment. See 20 C.F.R. § 416.913(a) (explaining that only physicians and other "acceptable medical sources" may provide evidence to establish the existence of an impairment). The Hearing Officer's finding regarding Appellant's mental impairments was based on Dr. Allen's report of only slight limitations to *Page 27 
mental activities. (MA-63, May 12, 2010, Ex. 7 at 3.) Further, Dr. Allen's report indicated that additional review of impairments would require a psychiatric evaluation. (MA-63, May 12, 2010, Ex. 7 at 4.) Based on Dr. Allen's report, which was given more weight than Dr. Trasatti's report, the Hearing Officer held that Appellant could not do her past job because it requires people skills based on her mental impairments. Rather, the Hearing Officer concluded that Appellant was capable of light work. See MA-63, May 12, 2010, Ex. 7 at 2-4;see also 20 C.F.R. § 416.927(d) (listing the factors a hearing officer considers in weighting the medical evidence and opinion);cf. Rosado v. Secretary of Heath and Human Services,807 F.2d 292, 293 (1st Cir. 1986) (explaining that a the hearing officer substituting his or her own impression of an individual's health foruncontroverted medical evidence engages in an impermissible lay translation of raw medical records beyond his or her expertise).
Finally, as to Appellant's physical impairments, the Hearing Officer explained that Dr. Allen's report indicated that Appellant requires orthopedic evaluation, and that there was no clinical evidence to preclude Appellant from standing, walking, or sitting six to eight hours. See
MA-63, May 12, 2010, Ex. 7 at 3; 20 C.F.R. § 416.927(d) (explaining that all medical opinions are weighed and the treating physician's opinions are given more weight). There was also no evidence that Appellant could not push, pull, lift, or carry up to ten pounds.See MA-63, May 12, 2010, Ex. 7 at 3; 20 C.F.R. § 416.927(c) (explaining that a hearing officer considers whether there is any laboratory or other medically acceptable testing and diagnostic evidence to support a medical opinion). Based on the lack of medical evidence, the Hearing Officer properly concluded that Appellant could perform light work and did not qualify as a disability for MA purposes. Therefore, the Hearing Officer's conclusion is not in excess of the statutory authority, affected by error of law, or arbitrary or capricious. *Page 28 
 F Appellant's Ability To Perform Other Work
Finally, Appellant argues the grids are inapplicable since Appellant argues she cannot do substantially all basic activities within a given exertional category. The DHS has the burden, based on either the grids or obtaining evidence from a vocational expert, to prove Appellant's ability to perform other work. At step five of the sequential evaluation process, the Hearing Officer must determine whether the claimant can do any work considering his or her age, education, and work experience. This inquiry necessitates a determination of the claimant's RFC because it reveals "the most [one] can still do despite [one's] limitations." 20 C.F.R. §§ 416.945(a)(1), 416.945(a)(5)(ii).
The RFC assessment requires a "function by function analysis" and is to be based on all of the evidence in the record, including evidence of additional impairments which are not considered "severe."Id.; 20 C.F.R. § 416.945(a)(2); Social Security Ruling ("SSR") 96-8p. The DHS "bears the burden of demonstrating the claimant's capacity to perform each of the RFC elements . . . and must proffer specific medical evidence in support of such demonstration."Sobolewski v. Apfel, 985 F.Supp. 300, 309-10 (E.D.N.Y. 1997). The decision that a claimant can return to work "must be based on more that conclusory statements." Pfitzner v. Apfel,169 F.3d 566, 568 (8th Cir. 1999). Light work is defined at 20 C.F.R. § 416.967(b) as follows:
 "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary *Page 29 
work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."
In this case, the Hearing Officer considered Appellant's age, education, and work experience to determine Appellant could make an adjustment to performing other work in the national economy. Specifically, the Hearing Officer considered that Appellant is forty-two years old, which is considered a "younger individual" under the federal regulations. See Administrative Hearing Decision at 2, 11; Tr. at 4; 20 C.F.R. § 404.1560(b)(3) (explaining that the hearing officer should take into consideration the claimant's residual function capacity, age, education, and work experience). The Hearing Officer also considered that Appellant has a post high school education; work history as an office manger, which is considered skilled; and the RFC to perform light work and simple routine tasks. (Tr. at 4-5; AP-70, May 12, 2010, Ex. 8 at 2, 4.) Accordingly, the Hearing Officer properly concluded that Appellant did not qualify as a disability for MA purposes, and the Hearing Officer's decision was not clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record.
 CONCLUSION
After a review of the entire record, this Court finds that the Hearing Officer's decision was supported by reliable, probative, and substantial evidence on the record; was not arbitrary or capricious or characterized by an abuse of discretion; and did not constitute an unwarranted exercise of discretion. Substantial rights of Plaintiff have not been prejudiced. Accordingly, the decision of DHS to deny Plaintiff MA benefits is affirmed. Counsel shall prepare an appropriate order for entry.
[1] The MART's duties include "analyz[ing] the complete medical data, social findings, and other evidence of disability submitted by or on behalf of the applicant" and "issu[ing] a decision on whether the applicant meets the criteria for disability based on the evidence submitted." Rhode Island Department of Human ServicesManual § 0352.15.20.
[2] The Grid "is a chart which classifies a claimant as disabled or not disabled, based on the claimant's physical capacity, age, education, and work experience" and aims to "simplify the determination of disability and to improve its consistency." Walker v. Bowen,834 F.2d 635, 640 (7th Cir. 1987).
[3] It is well established that threshold inquiry at this step is the 12-month durational requirement. See 20 C.F.R. § 416.909. The Hearing Officer did not specifically address this requirement; however, it may be implied that she found the durational requirement satisfied since she proceeded to analyze all five steps falling under the disability inquiry. See Administrative Hearing Decision at 7-11;see also Mark v. Celebrezze, 348 F.2d 289 (9th Cir. 1965) (providing that the determination of social security disability should not be from an exclusively technical viewpoint, thereby sacrificing the realities the individual case to rigid requirements).
[4] Appellant has indicated that a lack of health insurance has precluded her from visiting the doctor. Tr. at 6. *Page 1